**BROWN, Administrator, Office of Price Administration, v. AYELLO et al.**

**No. 22501.**

District Court, N. D. California, S. D.

June 1, 1943.

392

Ben C. Duniway, Regional Atty., John T. McTernan, Regional Enforcement Atty., Myer C. Symonds, Regional Litigation Atty., Stanley A. Weigel, Chief Atty., and Joseph F. Rankin, District Enforcement Atty., all of San Francisco, Cal., and Archer Bowden, Enforcement Atty., of San Jose, Cal., for plaintiff.

William E. Ferriter and James C. Purcell, both of San Francisco, Cal., for defendants.

ST. SURE, District Judge.

Plaintiff, Administrator of the Office of Price Administration, sued to enjoin and restrain defendants from selling turkeys at prices in excess of the price set forth in Revised Maximum Price Regulation No. 269—Poultry, as amended, enacted under the Emergency Price Control Act of 1942, Pub. Law No. 421, 77th Cong., 2d Sess., c. 26, 50 U.S.C.A. Appendix, § 901, et seq., alleging that defendants' acts constitute a violation of Section 4(a) of that Act. A preliminary injunction has been issued.

Defendants moved to dismiss the complaint and to vacate the preliminary injunction on the ground that this court has no jurisdiction over the persons of defendants or the subject matter of this action, and that the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 901 et seq., is unconstitutional.

Four other suits involving an alleged violation of Revised Maximum Price Regulation No. 269 are pending before Judge Roche and Judge Goodman, entitled as follows: Brown v. Magnani et al., No. 22499-R; Brown v. Catronova et al., No. 22500-G; Brown v. Spotorno et al., No. 22503-R; and Brown v. Amaro et al., No. 22502-G. In each of these actions the constitutionality of the Act has been similarly attacked. It has been stipulated that the decision and order of this court on motion to dismiss in Brown v. Ayello et al., No. 22501-S, shall be deemed to be the decision and order of the court in the above mentioned cases.

Defendants urge that the Act violates the provisions of Article I, Section 1, of the Constitution, in that it provides for an unconstitutional delegation of legislative power to the Administrator, and that it fails to set forth sufficiently the standards by which the Administrator is to be guided.

Section 1 of the Act provides as follows: "(a) It is hereby declared to be in the interest of the national defense and security and necessary to the effective prosecution of the present war, and the purposes of this Act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions or scarcities caused by or

contributing to the national emergency; to assure that defense appropriations are not dissipated by excessive prices; to protect persons with relatively fixed and limited incomes, consumers, wage earners, investors, and persons dependent on life insurance, annuities, and pensions, from undue impairment of their standard of living; to prevent hardships to persons engaged in business, to schools, universities, and other institutions, and to the Federal State, and local governments, which would result from abnormal increases in prices; to assist in securing adequate production of commodities and facilities; to prevent a post emergency collapse of values; to stabilize agricultural prices in the manner provided in section 3; and to permit voluntary cooperation between the Government and producers, processors, and others to accomplish the aforesaid purposes. * * *"

■ In determining how far Congress should go in defining the power of the Administrator it is necessary to consider the widespread effect of the Act, the impossibility of enacting a law to cover all contingencies, and the necessity of permitting administrative discretion in carrying out the terms and policy of the Act.

Section 2(a) of the Act provides in part: " * * * So far as practicable, in establishing any maximum price, the Administrator shall ascertain and give due consideration to the prices prevailing between October 1 and October 15, 1941 (or if, in the case of any commodity, there are no prevailing prices between such dates, or the prevailing prices between such dates are not generally representative because of abnormal or seasonal market conditions or other cause, then to the prices prevailing during the nearest two-week period in which, in the judgment of the Administrator, the prices for such commodity are generally representative), for the commodity or commodities included under such regulation or order, * * *."

Congress recognized that it could not arbitrarily set a date for the fixing of prices, because of the inequality that would be bound to result. By naming a period for the guidance of the Administrator in fixing prices it set as definite a standard as practicable and one which may be considered on appeal from the regulations made by the Administrator.

With the wide increase in scope of necessary administrative procedure the Supreme Court has become increasingly liberal in holding broad delegations of power sufficient under the Constitution, having regard to the purpose of the legislation and the practical aspects of its enforcement. "In dealing with legislation involving questions of economic adjustment," said the Supreme Court in United States v. Rock Royal Co-op, 307 U.S. 533, 574, 59 S.Ct. 993, 1013, 83 L.Ed. 1446, "each enactment must be considered to determine whether it states the purpose which the Congress seeks to accomplish and the standards by which that purpose is to be worked out with sufficient exactness to enable those affected to understand these limits. *Within these tests the Congress needs specify only so far as is reasonably practicable.*" (Emphasis supplied.) To the same effect is Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 398, 60 S.Ct. 907, 84 L.Ed. 1263.

Delegations of power far broader than that in the Act in question have been held constitutional. It is sufficient to refer to National Broadcasting Company v. United States, 63 S.Ct. 997, 1009, 87 L.Ed. ——, decided by the Supreme Court on May 10, 1943, where the constitutionality of the Federal Communications Act, 47 U.S.C.A. § 151 et seq., was attacked. The claim was made that there was an insufficient delegation of authority. The Court said, "The Commission was, however, not left at large in performing this duty. The touchstone provided by Congress was the 'public interest, convenience, or necessity', a criterion which 'is as concrete as the complicated factors for judgment in such a field of delegated authority permit'. Federal Communications Comm. v. Pottsville Broadcasting Co., 309 U.S. 134, 138, 60 S. Ct. 437, 439, 84 L.Ed. 656. 'This criterion is not to be interpreted as setting up a standard so indefinite as to confer an unlimited power. * * * The requirement is to be interpreted by its context, by the nature of radio transmission and reception, by the scope, character, and quality of services * * *.' Federal Radio Comm. v. Nelson Bros. Co., 289 U.S. 266, 285, 53 S.Ct. 627, 636, 77 L.Ed. 1166, 89 A.L.R. 406."

■ The "touchstone" provided by Congress in the Emergency Price Control Act is much more specific than "public interest, convenience, or necessity". I think that the Act sufficiently sets up the standards by which the Administrator is to be guided.

Defendants also contend that the Act violates the provisions of the 10th Amendment

to the Constitution; that "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." The basis of the Emergency Price Control Act is found in Article I, Section 8 of the Constitution of the United States.[1]

It is unnecessary to discuss in detail the widespread evils that have resulted in the past from permitting prices, increased due to war economy, to mount unrestrained. In the present war, where such a large percentage of the citizens are supported either directly or indirectly by Government funds, inflation could wreak havoc on the financial structure of the Nation which supports the war effort. In United States **v.** Macintosh, 283 U.S. 605, 622, 51 S.Ct. 570, 574, 75 L.Ed. 1302, the Court said: "From its very nature the war power, when necessity calls for its exercise, tolerates no qualifications or limitations, unless found in the Constitution * * *. In the words of John Quincy Adams, 'This power is tremendous; it is strictly constitutional; but it breaks down every barrier so anxiously erected for the protection of liberty, property and of life.'" And the court further stated that this power includes all the incidents necessary to make it effective, including the power to fix or regulate prices of food and other necessities of life.

■ It is clear that Congress has ample power to enact the legislation in question, and that it does not usurp the powers reserved to the states.

■ Defendants contend that the enforcement of the Act constitutes a taking of property without due process of law. Regulations such as the Act in question must be distinguished from the actual taking by the Government of private property for a public use, which taking must of course be compensated. If Congress has power to regulate prices in the present crisis, it is obvious that if the Government were liable to the merchant for the difference between the price set by the regulation and the price at which he might have sold, were it not for the regulation, the Act would be a nullity. It might as well be argued that the collection of taxes under a valid taxing act constitutes a taking of property without due process, or that the Government is liable to the railroads for the difference between the rates set by the Interstate Commerce Commission and those they might otherwise have charged. In cases of regulatory legislation it is necessary to examine first the question of whether Congress has power to pass the Act, for if it does the financial detriment to the business due to such regulation cannot of itself invalidate the Act. All property rights are held subject to proper legislative regulation, and any resulting loss is merely consequential. Cf. Morrisdale Coal Co. v. United States, 259 U.S. 188, 42 S.Ct. 481, 66 L.Ed. 892, and Ruppert v. Caffey, 251 U.S. 264, 40 S.Ct. 141, 64 L.Ed. 260.

■ A considerable portion of the briefs is devoted to a discussion of whether sections 203 and 204 of the Act are constitutional. These sections provide an exclusive method of review of price and rent regulations by the Administrator and the Emergency Court of Appeals, after which appeal may be made to the Supreme Court. Since the briefs were filed these sections have been held constitutional by the Supreme Court in Lockerty v. Phillips, 63 S.Ct. 1019, 1022, 87 L.Ed. ——, decided May 10, 1943, the court saying: "In the light of the explicit language of the Constitution and our decisions, it is plain that Congress has power to provide that the equity jurisdiction to restrain enforcement of the Act, or of regulations promulgated under it, be restricted to the Emergency Court, and, upon review of its decisions, to this Court. Nor can we doubt the authority of Congress to require that a plaintiff seeking such equitable relief resort to the Emergency Court only after pursuing the prescribed administrative procedure."

Defendants' motion to dismiss will be denied.

---

[1] "The Congress shall have Power To lay and collect Taxes, * * * to pay the Debts and provide for the common Defense and general Welfare of the United States. * * *

"To declare War, grant Letters of marque and reprisal, and make Rules concerning Captures on Land and Water;

"To raise and support armies, * * *

"To provide and maintain a Navy;

"To make Rules for the Government and Regulation of the land and naval Forces;

"To provide for calling forth the militia, to execute the Laws of the Union, suppress Insurrections and repel invasions; * * *

"To make all Laws which shall be necessary and proper for carrying into Execution the foregoing powers * * *."