## PAYNE v. GRIFFIN.
### Civil Action No. 89.

District Court, M. D. Georgia,
Thomasville Division.

Aug. 30, 1943.

Erle M. Donalson, of Bainbridge, Ga., for plaintiff.

A. B. Conger, of Bainbridge, Ga., for defendant.

Ralph R. Quillian, Chief Atty., OPA, of Atlanta, Ga., Perry Brannen, Chief Atty., OPA, of Savannah, Ga., and H. C. Eberhardt, Enforcement Atty., OPA, of Valdosta, Ga., for intervenor, Prentiss M. Brown, Administrator, Office of Price Administration.

DEAVER, District Judge.

This suit was brought by a tenant against a landlord under Section 205(e) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix § 925(e), to recover a money judgment for an alleged violation of a regulation as therein provided. Defendant moved to dismiss on the ground that the act and the regulation creating the right of action are unconstitutional and void. The plaintiff contends that this court has no jurisdiction to pass upon the constitutionality of either the act or the regulation. The Administrator came into the case by intervention. He admits jurisdiction to determine the constitutionality of the act but denies jurisdiction to question the validity of the regulation.

### I. Jurisdiction.

The act confers jurisdiction to try this case but in Section 204(d), 50 U.S.C.A. Appendix § 924(d) says that: "The Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2, of any price schedule effective in accordance with the provisions of section 206, and of any provision of any such regulation, order, or price schedule. Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders, or making ef-

fective any such price schedule, or any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision."

By Article 3, Section 1, of the constitution, the judicial power of the United States is vested in a Supreme Court and in such inferior courts as the Congress may from time to time ordain and establish.

A district court can entertain only such cases as Congress gives it jurisdiction to try. Jurisdiction to try any case or class of cases may be withheld altogether. But once Congress confers jurisdiction to try a case it cannot withhold power to decide the case according to the applicable law. The contention of the plaintiff is contrary to the decisions of the Supreme Court from Marbury v. Madison, 5 U.S. 137, 2 L.Ed. 60, down through the years to the present time.

If Congress prohibits an inferior court from trying a case, the court cannot entertain it and, if Congress confers jurisdiction to try a case, the court cannot refuse to accept jurisdiction. It is bound to hear and decide the case. But, having directed the court to try the case, Congress has no authority also to direct the court to render judgment in accordance with the terms of a void act in disregard of the supreme law of the land. The distinction is that, while Congress can determine what cases a court can try, it cannot direct what law shall control the decision.

In Adkins v. Children's Hospital, 261 U.S. 525, 544, 43 S.Ct. 394, 396, 67 L.Ed. 785, 24 A.L.R. 1238, is the following language: "The Constitution, by its own terms, is the supreme law of the land, emanating from the people, the repository of ultimate sovereignty under our form of government. A congressional statute, on the other hand, is the act of an agency of this sovereign authority, and if it conflict with the Constitution must fall; for that which is not supreme must yield to that which is. To hold it invalid (if it be invalid) is a plain exercise of the judicial power—that power vested in courts to enable them to administer justice according to law. From the authority to ascertain and determine the law in a given case, there necessarily results, in case of conflict, the duty to declare and enforce the rule of the supreme law and reject that of an inferior act of legislation which, transcending the Constitution, is of no effect and binding on no one. This is not the exercise

of a substantive power to review and nullify acts of Congress, for no such substantive power exists. It is simply a necessary concomitant of the power to hear and dispose of a case or controversy properly before the court, to the determination of which must be brought the test and measure of the law."

In Smyth v. Ames, 169 U.S. 466, 527, 18 S.Ct. 418, 426, 42 L.Ed. 819, the court said: "The idea that any legislature, state or federal, can conclusively determine for the people and for the courts that what it enacts in the form of law, or what it authorizes its agents to do, is consistent with the fundamental law, is in opposition to the theory of our institutions. The duty rests upon all courts, federal and state, when their jurisdiction is properly invoked, to see to it that no right secured by the supreme law of the land is impaired or destroyed by legislation."

See Muskrat v. United States, 219 U.S. 346, 359, 31 S.Ct. 250, 55 L.Ed. 246; 2 Story on the Constitution, p. 451, citing Osborn v. Bank, 9 Wheat. 738, 819, 6 L.Ed. 204.

Again, the Supreme Court, in United States v. Butler, 297 U.S. 1, 62, 56 S.Ct. 312, 318, 80 L.Ed. 477, 102 A.L.R. 914, said: "There should be no misunderstanding as to the function of this court in such a case. It is sometimes said that the court assumes a power to overrule or control the action of the people's representatives. This is a misconception. The Constitution is the supreme law of the land ordained and established by the people. All legislation must conform to the principles it lays down. When an act of Congress is appropriately challenged in the courts as not conforming to the constitutional mandate, the judicial branch of the government has only one duty; to lay the article of the Constitution which is invoked beside the statute which is challenged and to decide whether the latter squares with the former. All the court does, or can do, is to announce its considered judgment upon the question. The only power it has, if such it may be called, is the power of judgment. This court neither approves nor condemns any legislative policy. Its delicate and difficult office is to ascertain and declare whether the legislation is in accordance with, or in contravention of, the provisions of the Constitution; and, having done that, its duty ends."

592

The Supreme Court, in Carter v. Carter Coal Co., 298 U.S. 238, 296, 56 S.Ct. 855, 866, 80 L.Ed. 1160, again spoke, as follows: "The supremacy of the Constitution as law is thus declared without qualification. That supremacy is absolute; the supremacy of a statute enacted by Congress is not absolute but conditioned upon its being made in pursuance of the Constitution. And a judicial tribunal, clothed by that instrument with complete judicial power, and, therefore, by the very nature of the power, required to ascertain and apply the law to the facts in every case or proceeding properly brought for adjudication, must apply the supreme law and reject the inferior statute whenever the two conflict. In the discharge of that duty, the opinion of the lawmakers that a statute passed by them is valid must be given great weight, Adkins v. Children's Hospital, 261 U.S. 525, 544, 43 S.Ct. 394, 67 L.Ed. 785, 24 A.L.R. 1238; but their opinion, or the court's opinion, that the statute will prove greatly or generally beneficial is wholly irrelevant to the inquiry. Schechter Poultry Corp. v. United States, 295 U.S. 495, 549, 550, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947."

■ "Whenever, in pursuance of an honest and actual antagonistic assertion of rights by one individual against another, there is presented a question involving the validity of any act of any legislature, state or federal, and the decision necessarily rests on the competency of the legislature to so enact, the court must, in the exercise of its solemn duties, determine whether the act be constitutional or not." Chicago, etc., Railway Co. v. Wellman, 143 U.S. 339, 345, 12 S.Ct. 400, 402, 36 L.Ed. 176.

■ An unconstitutional law is no law and no court is bound to enforce it. 11 Am.Jur. p. 827, Sec. 148.

■ If a court has jurisdiction to try a case, it has inherent power to determine whether an act, on which the existence of the right of action depends, conforms to the Constitution. See 11 Am.Jur. p. 709, Secs. 86, 88 and cases cited in support of the text.

■ Decisions might be multiplied almost without number, but those cited are sufficient to show that the power of Congress to limit the jurisdiction of inferior courts refers to the character of cases and does not include power to limit the law to be applied in the trial of cases which the court has jurisdiction to hear. See In re American States Public Service Co., D.C., 12 F.Supp. 667, 690.

A contrary conclusion would enable Congress to require courts to enforce any act though clearly void. "Congress have not power to give original jurisdiction to the supreme court in other cases than those described in the constitution." Marbury v. Madison, 5 U.S. 137(2), 32 L.Ed. 60. If Congress can withhold power to determine the validity of an act from one inferior court, it could withhold such power from all inferior courts. It would follow that Congress could require an inferior court to render judgment in a case depending entirely on a void statute and prevent its validity from being passed upon by any inferior court. In a case, therefore, of which the Supreme Court has no original jurisdiction, the validity of the act could never be questioned in any court.

■ It is apparently well settled that, while Congress can prohibit an inferior court from trying a case at all, it cannot authorize such a court to try a case and at the same time prevent the court from trying it according to the supreme law of the land. "Determination of a constitutional question is necessary and proper whenever it is essential to the decision of the case, as where the right of a party is founded solely on a statute, the validity of which is attacked." 16 C.J.S. Constitutional Law, § 94, p. 214.

■ The contention of the Administrator stands no better. In this case plaintiff is asking a judgment for money against the defendant. If a right to such judgment exists at all, it exists solely by reason of the statute and the regulation made pursuant to the statute. If the statute is valid and the regulation is valid, they together create a cause of action for violation of the regulation. If the statute is not valid, the regulation is nothing and no cause of action exists. Jurisdiction to try the case is jurisdiction to determine whether plaintiff by law is entitled to recover. To decide that question the court is bound to ascertain what law governs. If the regulation is valid, it has the force of law but it is no law apart from the statute itself. The statute and the regulation are interdependent in creating the cause of action and there is no cause of action unless both are valid. Whether either is valid depends upon its conformity to the supreme law of the land.

If by that law the statute is void, the regulation falls and there is no law authorizing judgment in favor of plaintiff.

The very question, therefore, which Congress forces this court to determine, by conferring jurisdiction to try the case, namely, the question of whether plaintiff by law is entitled to recover, depends upon the validity of the statute which creates the cause of action. The authorities applicable to the contention of the plaintiff are equally applicable to the contention of the Administrator.

 When Congress withholds from a court equity jurisdiction to enjoin the enforcement of a regulation, it does not call upon the court to act but, indeed, prohibits it from entertaining the suit at all. But when Congress directs a court to enforce a regulation by rendering a money judgment, the court is bound to decide whether such judgment is authorized by law, and a regulation made in pursuance of a statute·in conflict with the Constitution is not law. See Lockerty v. Phillips, 63 S.Ct. 1019, 1023, 87 L.Ed. ——. See also St. Joseph Stock Yards Co. v. United States, 298 U.S. 38(13), 56 S.Ct. 720, 726, 80 L.Ed.· 1033, holding that: "Under our system there is no warrant for the view that the judicial power of a competent court can be circumscribed by any legislative arrangement designed to give effect to administrative action going beyond the limits of constitutional authority."

## II. Constitutionality.

 The attack here made relates, not to the entire act, but only to the rent provisions. The war powers of Congress are not questioned. The power of Congress to enact a statute controlling rents in time of war is not denied. One of the contentions is that Congress has not passed·a statute regulating rents, to be administered by an Administrator, but has undertaken to authorize the Administrator so to legislate.

 To urge that Article 1, Section 8, of the Constitution settles the matter is to miss the question. That Article grants powers but it does not authorize Congress to delegate those powers.

 Congress has power to enact a law to become effective when certain conditions come into existence and may delegate to an administrative officer the authority to determine, in accordance with the standard laid down by Congress, when the conditions have come into existence. Or, Congress may declare a policy and fix a definite standard by which the administrator is to be controlled and authorize him to make subordinate rules for the administration of the act. However, Congress cannot permit the Administrator to determine what the law shall be.

In the present statute, Congress declares that, for reasons set out, it is good policy to stabilize prices including rents. It then provides for an Administrator and·authorizes him to "issue such regulations and orders as he may deem necessary or proper in order to carry out the purposes and provisions of this Act." The Administrator is authorized, but not required, to·make such investigation as he deems necessary or proper to assist him in making·and enforcing regulations, and may take, official notice of economic data and other facts. As to rent, the act defines a defense-rental area as, the District of Columbia and any area ·designated by the Administrator as an area where defense activities have resulted or threaten to result in an increase in the rents for housing accommodations inconsistent with the purposes of this act. Under Section 2(b), 50 U.S.C.A. the Administrator may, by regulation, fix such maximum rents as in his judgment will be generally fair and equitable and will effectuate the purposes of the act. So far as practicable, the Administrator is to ascertain and give due consideration to rents prevailing about April 1, 1941. The act provides for protest within 60 days and after that the regulation is conclusive and no protest can. be made except .on new grounds arising after the 60 day period.

In 11 Am.Jur. p. 957, Sec. 240, it is said that: "Thus, the authority attempted to be delegated to the President by Congress under the National Industrial Recovery Act, limiting his powers in no way and extending his discretion to all the varieties of laws which he might deem to be beneficial in dealing with the vast array of commercial and industrial·activities throughout the country, thereby allowing him to impose within his discretion his own conditions to effectuate·a so-called 'policy', which was merely·a statement of opinion, was such a sweeping delegation of powers properly exercisable only by the legislature itself as to fall beyond the pale of constitutional limits. 'There can be no grant to the executive of any roving commission to inquire into evils and, upon

discovering them, to do anything he pleases to correct them.' "

As to delegation of legislative power, the Supreme Court, in Field v. Clark, 143 U.S. 649, 694, 12 S.Ct. 495, 505, 36 L.Ed. 294, quoted the following language: "The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend."

In Wichita R. & Light Co. v. Public Utilities Comm., 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124, the court was dealing with the power of an administrative body to fix rates. The act there required the Commission, after hearing and investigation, to find existing rates to be unreasonable before reducing them but there was no requirement that the order should contain the finding. See Mahler v. Eby, 264 U.S. 32, 44, 44 S.Ct. 283, 68 L.Ed. 549. The court held that delegation of pure legislative power is unconstitutional and said that, in creating such an administrative agency the legislature, to prevent its being a pure delegation of legislative power, must enjoin upon it a certain course of procedure and certain rules of decision and that the agency must pursue the procedure and rules and show substantial compliance therewith to give validity to its action. The court held also that lack of an express finding could not be supplied by inference. So, in that case, the Commission, after hearing, could not, without an express finding of unreasonableness, fix rates which, in its judgment, would be fair and reasonable.

The same principle, in Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409, 48 S.Ct. 348, 72 L.Ed. 624, is applied to fixing customs. There, however, specific rules were laid down to govern the President and findings of fact were required.

▮ Prerequisites to action must be stated and compliance must be shown. If authority depends upon determination of facts, that determination must be shown. Panama Refining Co. v. Ryan, 293 U.S. 388(11, 12), 55 S.Ct. 241, 79 L.Ed. 446.

The court, in St. Joseph Stock Yards Co. v. United States, 298 U.S. 38(4), 56 S.Ct. 720, 80 L.Ed. 1033, held that: "In the fixing of rates—a legislative act—the legislature has a broad discretion which it may exercise directly or through a legis-lative agency authorized to act in accordance with standards prescribed by the legislature." Headnote (7) of that case says: "Where the legislature appoints a rate-fixing agent to act within the limits of legislative authority, it may endow the agent with power to make findings of fact which are conclusive, provided the requirements of due process which are specially applicable to such an agency are met, as in according a fair hearing and acting upon evidence and not arbitrarily."

Again, in Morgan v. United States, 304 U.S. 1, 14, 58 S.Ct. 773, 775, 999, 82 L.Ed. 1129, the court said: "The first question goes to the very foundation of the action of administrative agencies intrusted by the Congress with broad control over activities which in their detail cannot be dealt with directly by the Legislature. The vast expansion of this field of administrative regulation in response to the pressure of social needs is made possible under our system by adherence to the basic principles that the Legislature shall appropriately determine the standards of administrative action and that in administrative proceedings of a quasijudicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand 'a fair and open hearing,' essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process."

Rate-making is a species of price fixing. "The problem of fixing reasonable prices for bituminous coal cannot be differentiated legally from the task of fixing rates under the Interstate Commerce Act (41 Stat. 484, 49 U.S.C.A. § 15) and the Packers and Stockyards Act (42 Stat. 166, 7 U.S.C.A. § 211). The latter provide the standard of 'just and reasonable' to guide the administrative body in the rate-making process." Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 398, 60 S.Ct. 907, 914, 84 L.Ed. 1263.

In rate cases the administrative body is required not only to afford an opportunity for hearing but also to make findings of fact to support its conclusion that the rates are reasonable and just. See Mahler v. Eby, 264 U.S. 32, 44, 44 S.Ct. 283, 68 L.Ed. 549. That is said to be necessary to prevent the delegation of such power from being unconstitutional. If this act provided for a hearing and findings of fact

and a conclusion that from those facts the rents fixed are, in the judgment of the Administrator, equitable and fair, then the act might be construed to say that the maximum rent in any case shall be whatever the Administrator finds to be equitable and fair.

█ Fixing fair and equitable prices is a legislative function. What the decisions mean is that, if Congress authorizes an administrator to fix such prices as he thinks are fair and equitable, it delegates legislative power, but if Congress says, in effect, that prices fixed on the basis of certain ascertained facts would be fair and equitable, and authorizes an Administrator to ascertain those facts and to make a regulation containing, not his uncontrolled opinion, but the result of those facts, then Congress by designating the controlling facts fixes the prices and the Administrator acts only as agent of Congress in finding the facts and declaring the result. That is the reason why the price fixing acts require express findings of fact after hearing and that is why the Supreme Court says that express findings after hearing are necessary in order to prevent the authority of the Administrator from being a pure delegation of legislative power contrary to the Constitution.

█ ·There is nothing to the contrary in the Opp Cotton Mills v. Administrator of Wage and Hour Division, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624. On page 145 of the opinion in 312 U.S., 61 S.Ct. on page 533, the court says that the essentials of legislative function "are preserved when Congress specifies the basic conclusions of fact upon ascertainment of which, from relevant data by a designated administrative agency, it ordains that its statutory command is to be effective." Throughout that case it is apparent that Congress must declare the ultimate fact upon which a statute is ·to become operative and it may then leave the determination of the ultimate fact to any administrative agent, but that, where, in order to ascertain the existence of the ultimate fact, it is necessary for such agent to exercise his judgment upon intermediate or subsidiary facts, he must make a record or express findings of the intermediate facts, so that "congress, the courts and the public can ascertain whether the agency has conformed to the standards which congress has prescribed." The court, on page 145 of the opinion in 312 U.S., 61 S.Ct. on

page 532, 85 L.Ed. 624, says that Congress need not itself find all the facts intermediate or subsidiary to the basic conclusion or ultimate fact in fixing a tariff rate, or a railroad rate or rate of wages. But the reasoning in that case seems to demand that the Administrator expressly set out the subsidiary or intermediate facts from which he arrives at the "basic conclusions of fact", which the court says Congress must specify. That is in line with other decisions of the Supreme Court which hold that express findings are essential to the validity of the regulation. The reason Congress does not hear the subsidiary facts is because it is impossible or impracticable. If Congress heard the intermediate facts, it could arrive at the basic or ultimate conclusion and on that basis fix a price in the statute. But where, for practical reasons, Congress only specifies the basic or ultimate fact and must rely upon an Administrator to ascertain the existence of that basic fact, then, the Supreme Court says, the Constitution and fair play both require the Administrator to record the subsidiary facts.

█ In the present case, the Administrator, though contending that findings are not necessary, says he has made findings. That depends, of course, upon his definition of findings. Without reciting all the statements in the rent Declaration and in the Regulation, it is sufficient to say that those documents, in effect, simply declare that in the Administrator's judgment, the basic facts exist and do not contain findings of subsidiary facts such as the Supreme Court has held necessary. ·

█ If the requirement that the rent fixed shall be what the Administrator thinks is "fair and equitable" be a standard, his so-called findings simply state that in his judgment they are fair and equitable without containing the intermediate facts which caused him to think so. The argument presented for the Administrator creates the impression that the Administrator construes the act to require him to ascertain prevailing rents at some base date and, with some adjustments, to fix those rents by regulation as fair and equitable. His apparent construction of the act is emphasized by the fact that by other regulations he included the entire United States as defense rental areas and froze rents as of his base date. The recent case of Brown, Adm'r, v. Ayello, D.C., 50 F. Supp. 391, 393, seems to adopt somewhat

the same view. It says that: "Congress recognized that it could not arbitrarily set a date for the fixing of prices, because of the inequality that would be bound to result. By naming a period for the guidance of the Administrator in fixing prices it set as definite a standard as practicable." With deference to the opinion of the Administrator and of the court in the Ayello case, it is submitted that such is not the meaning of the act. Congress did not declare that fair and equitable rents should be such rents as prevailed on a base date and direct the Administrator to ascertain what such prevailing rents were. Prevailing rent is just one of the subsidiary facts to be considered, so far as practicable, in arriving at the basic fact, namely, what rent would be fair and equitable. Prevailing rent, therefore, is not a standard at all, but a subsidiary fact which, along with all other subsidiary facts, the Administrator is bound to find and record. Moreover, the standard, which would prevent the act from being unconstitutional, is not rents which in the judgment of the Administrator are fair and equitable, but rents shown by ascertained and recorded facts to be fair and equitable.

 The Administrator urges further that, even if findings were necessary, they "may be supplied by implication." The contrary is held in the Wichita R. case, supra.

Moreover, the act would have to leave open for judicial determination the question of due process. See Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575(4), 62 S.Ct. 736, 86 L.Ed. 1037.

 After the Administrator fixes the maximum rent, the provision for protest and appeal, it is said, affords due process. It might do so theoretically but not actually. In the Morgan case, supra, the court held that: "In administrative proceedings of a quasijudicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand 'a fair and open hearing.'"

 People know that they are charged with knowledge of the law but, without actually knowing the law, they have been accustomed to make defenses only when the law is sought to be enforced against them. An act which permits an Administrator to fix prices without notice or hearing and then makes those prices conclusive after 60 days would, in practical operation, have the effect of cutting off defenses. That is especially true where the procedure provided makes it too inconvenient and expensive for individuals in small cases to follow the procedure. Ordinarily, when Congress itself passes a law, it does not try to make the law immune from attack or prohibit defenses but permits defenses to be made at any time an individual is proceeded against under the law. If the matter is subject to very strict construction, then this act may technically provide due process, but practically it would result in entrapping a large number of citizens. That might not constitute the fair play intended by the Supreme Court.

The act, in effect, says that, for reasons set out, it is good policy to control rents during the war and then authorizes the Administrator to fix such maximum rents as he thinks will be generally fair and equitable and will effectuate the purposes of the act.

 An express finding, if the Administrator were required to make it, that the prices fixed would effectuate the purposes of the act, would not be a standard but a mere statement of opinion. Schechter Poultry Corp. v. United States, 295 U.S. 495(8), 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947.

Under this act, the Administrator can fix rents without notice or hearing and without express findings of fact and with only such investigation as in his discretion he may decide to make. The standard is not what Congress thinks would be fair and equitable under designated facts but what the Administrator, in his uncontrolled discretion, thinks would be fair and equitable.

Then, when the regulation is sought to be enforced against a defendant and he is forced into a local court, he finds that he cannot attack the validity of the act or the regulation and that, if 60 days have elapsed, he cannot question whether the regulation is fair and equitable because it has become conclusive without notice or opportunity to be heard, except such notice as he is charged with by a law which, in effect, says that, though no proceeding has been instituted against him, he must protest in advance and appeal to a distant court or be concluded.

Conditions created by the war do not enlarge constitutional power. Congress must establish the standards of legal obligation. Schechter Poultry Corp. v. United States, 295 U.S. 495, 530, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947.

It is easy for government agencies, some of which apparently are opposed to any limitation of their powers and are impatient of all constitutional restrictions, to admit the limitations stated in the Constitution and then to ridicule the idea that their powers are affected by them. The act of the Administrator in designating the entire United States as defense-rental areas affords an illustration of the dangerous tendency to assume and exercise powers never intended by Congress to be granted or by the Constitution to be exercised. That tendency makes apparent the wisdom of the rule laid down by the Supreme Court that any Administrator in the exercise of his authority should be required to make express findings of the subsidiary facts on which he acts. Administrative agents have become so numerous and government by regulation so extensive that courts, it is to be feared, may gradually yield to their unceasing insistence and permit the rights of the people to be destroyed and subject them to control by regulations, which result was never intended by the Constitution, apparently regarded by some agencies as an outmoded instrument.

That rents should be controlled during the war cannot be reasonably doubted, but courts have no power to determine policy. To preserve the permanent constitutional liberties of the people is the sworn duty of courts (Marbury v. Madison, 5 U.S. 137, 178, 2 L.Ed. 60) and is not to be compared with some good end which might result from permitting government agencies to exercise unauthorized power by regulation because of some temporary emergency.

In the absence of some controlling decision, a court cannot avoid the responsibility of deciding according to its own conviction. The conviction of this court is that the rent provisions of this act are invalid.