HURST, APPELLEE, *v.* HAAK ET AL., APPELLANTS.

(No. 2114—Decided October 6, 1943.)

*Mr. Clayton Hoffman,* for appellee.

*Mr. George J. Burke, Mr. James C. Gruener, Mr. Robert H. Trenkamp* and *Mr. Robert P. Wilson,* for the Administrator.

*Mr. Herschel Kriger,* for appellants Harry and Lena Haak.

SHERICK, J. This is an eviction action between landlord and tenants owning and occupying living quarters in a defense-rental area, so declared by the price administrator. It was commenced in the Municipal Court of Canton. Soon thereafter the administrator requested leave to be made a party defendant. The request was granted and thereafter the price administra-

tor assumed and bore the major portion of the defense. Upon trial the court found that inasmuch as the tenancy was on a month to month basis the landlord may terminate it at will. In other words, it was found that in such a case it was unnecessary for the plaintiff to give preliminary notice, as prescribed in Section 6 (d) (1) and Section 6 (d) (2) of Maximum Rent Regulation No. 15 as promulgated by the price administrator pursuant to the Emergency Price Control Act and the amendment thereto; and that, inasmuch as plaintiff had fully complied with the provisions of the state law, Section 10451, General Code, respecting the giving of notice in actions of forcible entry and detainer, which was controlling, plaintiff was entitled to a writ of restitution which was ordered. Thereupon the administrator and the tenants, independent of each other, gave notice of their intention to appeal, the tenants upon questions of law and fact, the administrator upon questions of law alone. The court granted a stay of execution pending these appeals.

The appeal of the administrator has been dismissed for failure to file briefs in accordance with Rule 7. The tenants' appeal was also attacked by motion to dismiss. The fact feature of their appeal has, of course, been dismissed and the cause retained as one on questions of law. The tenants, appellants, having filed no briefs, ask leave to adopt and refile the administrator's brief. This request was not only granted but counsel for the administrator were permitted to argue and present the tenants' appeal. This was done because of the importance of the matter in issue.

Certain phases of the parties' position, as disclosed by argument, briefs and the record, require comment preliminary to consideration of the question for solution. Plaintiff tried her case upon the theory of nuisance. The record displays ample proof thereof, even though the tenants assert the contrary. The defend-

ants placed their main reliance on lack of notice in conformity to the administrator's regulations. The plaintiff does not concede this point. Whether the regulations were complied with is relatively of little importance, as we shall hereinafter demonstrate. It appears from the files before us that the trial court took the view that plaintiff's action was properly triable on the issue of one's right to contract, which was untouched by the federal act and the administrator's regulations. This was provoked by the court's desire to conform to a prior judgment of the Court of Common Pleas of Stark county. As we see the matter, plaintiff's complaint was predicated on nuisance. She was entitled to have her cause so tried. If the court was right in its conclusion, even though its judgment was questionable on its theory of the case, its judgment should be affirmed. We shall treat this review just as if plaintiff had proved that her tenants had committed a nuisance, because of which she would ordinarily be entitled to a restitution of her property.

It must further be understood that the constitutionality of the federal act is not involved. The real query is whether the trial court, or this court, may question or consider the propriety of the administrator's regulation, which defendants say may be done only by the Emergency Court created and so empowered by the federal act, and that the Emergency Court alone possesses such jurisdiction. If the regulations are responsive to the purpose and powers properly delegated to the administrator by the act, then it must follow that the defendants have the right of it, and the landlord must strictly pursue the administrator's regulations as to notice, upon the arbitrary rule that such an act is an imperative war measure necessary to control rent inflation which was recognized in a like act in *Block* v. *Hirsh,* 256 U. S., 135, 65 L. Ed., 865, 41 S. Ct., 458, 16 A. L. R., 165.

If, on the other hand, the regulations go beyond the purpose of the act and the powers thereby delegated, and thereby arbitrarily abrogate and temporarily nullify provisional remedies created by state statutes, then the question presented is neither one of interpretation of the regulations nor a questioning of their propriety; but the inquiry goes to the power of the administrator to make any regulations covering a subject which is not within the scope and purpose of the act under which they purport to be promulgated. Such a subject is always one for judicial inquiry in any court wherein constitutional rights are sought to be enforced. If this were not true, then one who has been delegated certain powers may assume to exercise others that were never embraced within the grant or intended to be exercised.

Our attention has been called to three cases wherein federal courts have considered the constitutionality of the act. The first, *Henderson* v. *Kimmel,* 47 F. Supp., 635, holds it constitutional. The other two, *Roach* v. *Johnson,* 48 F. Supp., 833, and *Payne* v. *Griffin,* 51 F. Supp., 588, hold the act unconstitutional. All three of these adjudications have to do with maximum rent provisions. They are not responsive to the inquiry which this court now encounters.

The rule concerning the right to delegate legislative powers is thus stated in *United States* v. *Rock Royal Co-Operative,* 307 U. S., 533, 83 L. Ed., 1446, 59 S. Ct., 993, headnote 26:

"For the purpose of determining whether legislation involving questions of economic adjustment involves an invalid delegation of legislative power, each enactment must be considered to determine whether it states the purpose which the legislature sought to accomplish and the standards by which that purpose is to be worked out with sufficient exactness to enable those

charged with the enforcement of the law to under-
stand these limits.''

From which it must follow that if an act clearly
states its purpose, it can and does not authorize a dele-
gation and exercise of power not embraced within its
declared purpose. The mere fact that congressional
policy directs that rents shall be stabilized does not
confer power upon an administrator to control all liti-
gation in the forcible entry and detention field, which
is not concerned with maximum rent.

Just what is the purpose of the Emergency Price
Control Act insofar as it affects rents? Its title reads:

''To further the national defense and security by
checking speculative and excessive price rises, price
dislocations, and inflationary tendencies, and for other
purposes.''

Section 1 (a) which defines its purpose insofar as it
respects rents, states that:

''* * * the purposes of this Act are, to stabilize
prices and to prevent speculative, unwarranted, and
abnormal increases in prices and rents.''

The section proceeds on to recite the evils of infla-
tion which the act proposes to check, and declares that
it shall be the policy of other affected boards ''to work
toward a stabilization of prices.''

Sections 2 (a), (b) and (c) confer powers upon the
price administrator to promulgate regulations. Sub-
section (b) particularly authorizes the administrator
to create defense-rental areas, and to ''establish such
maximum rent or maximum rents for such accommo-
dations as in his judgment will be generally fair and
equitable and will effectuate the purposes of this act.''

All these subsections throughout, as well as the pro-
hibitions found in Section 4 (a), (b) and (d), are ad-
dressed to the common end that Congress was con-
cerned with maintenance of the price structure, and
prevention of inflation, by the establishment of maxi-

mum rents that might be charged within a declared rent-area. It clearly intended to curb all manner of rent pyramiding in order that the war effort might not be hampered by such practices, and nothing more.

In Section 302, subsection (g) it defines the term "rent" to mean "the consideration demanded or received in connection with the use or occupancy or the transfer of a lease of any housing accommodations." In subsection (i) of the same general section, it defines the term "maximum rent" to mean "the maximum lawful rent for the use of defense-area housing accommodations."

There is not one positive provision within the entire act which warrants an assumption that Congress ever intended to dispossess landlords of their lawful right to resort to state courts for redress of a wrong done to their property by a tenant during the course of the tenancy when price was not also an issue involved. The act did not delegate power in the administrator over non-defense areas. Neither does it confer power in defense areas to its administrator to stifle rights which alone concerned matters other than price, or to say to the landlord in every case that warranted ejectment that he must not move to procure restitution until the administrator or someone under him capriciously consents thereto.

Did Congress propose to initiate a policy, to promote the war effort, that a property owner might not eject a duplex tenant engaged in operating a house of prostitution therein, without the administrator's consent, when that tenancy made it impossible to retain tenants in the other half of the property? The absurdity of the question admits of but one answer, which is an emphatic no.

The evidence in the record before us discloses that plaintiff is a widow, dependent on the rents from her two-suite apartment; and that defendants' Haaks' acts

and conduct in their occupancy have made it impossible to keep her second apartment rented. There is no present or contemplated evidence of violation of maximum rent regulations. The intervention of the administrator in the parties' controversy is uncalled for and unauthorized.

It is the judgment of this court that the administrator has assumed the power to regulate a matter that was not granted under the act. His interference therein is not sanctioned by law. He is without power or authority to promulgate regulations that supersede state law which is alone controlling. The trial court reached the correct conclusion. Its judgment is therefore affirmed.

*Judgment affirmed.*

MONTGOMERY, P. J., and PUTNAM, J., concur.