No. 36,055

DAVID RITCHIE, *Appellant,* v. B. H. JOHNSON et al., *Appellees.*

(144 P. 2d 925)

 Opinion filed
January 22, 1944. 

*C. L. Clark,* of Salina, argued the cause, and *David Ritchie,* of Salina, was on the briefs for the appellant.

*Fleming James, Jr.,* of Washington, D. C., argued the cause, and *James B. Nash, A. D. Weiskirch, Ellis C. Clark,* all of Wichita, *Amos J. Coffman,* of Dallas, Tex., *Thomas I. Emerson, David London* and *Edward H. Hatton,* all of Washington, D. C., were on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover possession of real estate from two defendants and for equitable relief against all of the defendants. The motion of one defendant to quash service of summons and the dumurrers of other defendants were sustained by the trial court, and from the several adverse rulings the plaintiff appeals.

The petition sets forth two causes of action, and so far as need be noted, contains the following allegations:

The first cause of action sounds in ejectment. It is alleged that plaintiff is a resident of Salina, Kan., and that he is not now and has not been in the military service of the United States; and that the defendants Johnson are citizens of Salina and are not connected with the military service of the United States; that plaintiff is the owner in fee simple of certain described real estate in Salina, and under an oral arrangement with the defendants Johnson he rented the real estate to them from month to month, that in accordance with G. S. 1935, 67-504, he served notice upon them to surrender the real estate to him, a copy of the notice and service being attached to the petition as an exhibit; that plaintiff is entitled to possession of the real estate but defendants Johnson refused to surrender possession to the plaintiff and wrongfully and unlawfully keep the plaintiff out of possession thereof.

The second cause of action will be briefly stated. All of the allegations of the first cause of action are made part of the second cause of action, and it is alleged that the congress of the United States enacted a law, duly approved January 20, 1942, entitled

"Emergency Price Control Act of 1942." A copy of the act (56 Stat. 23, 50 U. S. C. A. 901 *et seq.*) is attached to the petition as an exhibit. We shall refer to it hereafter as the Act. It is further alleged that plaintiff has been in possession of the real estate by himself and his tenants for more than twenty years; that defendant Prentiss Brown is the administrator appointed under the above Act with his place of business and post-office address in Washington, D. C., and that defendant C. B. Dodge, Jr., is the local director for the defense area in which Salina, Kan., is situated. After pleading at length parts of section 2 subdivisions (b) and (d) and of section 4 subdivisions (a) and (b) of the Act, plaintiff alleges that he is the owner of other housing properties in Salina rented to tenants not in the military service, part of which properties are rented upon written contracts which provide for the collection of more rentals than were being paid for the same properties on March 1, 1942, and that the making and enforcement of those parts of the Act referred to and all other portions of the Act relating to rental of properties by and between civilian residents of this state and each of them are entirely void and invalid for the following reasons:

1. That no power has been delegated by the constitution of the United States or the amendments thereto authorizing the congress to regulate rents between private citizens, and that the Act is in violation of the tenth amendment and invades the province of the states.

2. That the enactment or enforcement of the Act would deprive plaintiff of his liberty and property without due process of law and that private property cannot be taken even for public use without just compensation in violation of the fifth amendment.

3. That neither the congress nor any department of the United States government has been delegated any power by the constitution to take private property of the plaintiff and turn it over to some other private person for his private enrichment and not to serve any public purpose and the portions of the Act referred to are void and unenforceable.

It is further alleged that the administrator has purported to make certain regulations for the enforcement of the Act, designated as Maximum Rent Regulation No. 57 and hereafter referred to as Regulation 57, a copy of such regulation being attached to the peti-

tion as an exhibit (Superseded by Rent Regulations for Housing, 8 Fed. Reg. 7322 *et seq.* promulgated June 1, 1943) and thereunder that Saline county is a defense-rental area and that the maximum rental until changed shall be the rental for such accommodation on March 1, 1942; that a certain described area is the natural trade territory of the city of Salina and is an agricultural area; that for ten years preceding March 1, 1941, there had been a continued drouth and an economic depression and little agricultural products had been produced, all of which deprived Salina of normal economic conditions and rental values of residential and business properties decreased below the point of earning a fair return; that due to the economic depression residents of Salina had gone elsewhere for employment and further depressed rental values in Salina and on March 1, 1942, rents were lower than they had been during the preceding forty years, and to adopt rentals as of March 1, 1942, as a rental basis was arbitrary, capricious and confiscatory; that section 2, subdivision (a) of the Act provides that before any order is issued the administrator shall, so far as practicable, advise and consult with representative members of the industry affected by such order, and that before the issuance of any of the regulations referred to in the petition the administrator did not advise and consult with representative landlords and tenants in Salina, and that none of the parties interested was afforded any opportunity to be heard; that the regulations were made arbitrarily, capriciously and without notice, investigation or hearing, and are confiscatory and deprive plaintiff of a fair return on his capital investment, contrary to the fifth amendment to the United States constitution.

It is further alleged that the authorization of the issuance of the rules made by the administrator is an unlawful delegation of congressional authority, the issuance of such rules deprives plaintiff of his property, is confiscatory, is in the nature of a judicial determination without notice or opportunity to be heard and is not due process of law as required by the fifth amendment. Then follow allegations as to many other named owners of real estate and that they have a common interest in whether the law and regulations referred to are valid and that it is impracticable to bring separate suits and plaintiff is bringing the suit in behalf of all persons similarly situated.

It is further alleged that defendant Dodge under instructions from defendant Brown, the administrator, is counseling and advising de-

fendants Johnson not to pay any attention to the laws of Kansas and to defy the same and to forcibly retain possession of the real estate, and that Brown and Dodge are threatening to prosecute plaintiff and the other owners referred to if they do not comply with each and every regulation referred to in the petition. As explanatory of plaintiff's cause we may state that the prayer of the petition is that defendants Johnson be ousted and possession of the premises be delivered to plaintiff; that defendants be barred and estopped from claiming any interest in the property or any right to control the rents thereof, and enjoining Brown and Dodge from interfering with plaintiff or those having property in like situation, in the control, use, occupancy and rental of their real property.

The defendants Johnson demurred to the petition for the reason that it failed to state a cause of action for ejectment; that Salina, Kan., is a defense-rental area and Regulation 57 contains requirements for obtaining possession and the petition fails to allege compliance with such regulations and does not state facts sufficient to constitute a cause of action. The defendant Dodge demurred on the grounds that the court had no jurisdiction of the person of the defendant or of the cause of action and that the petition does not state facts sufficient to constitute a cause of action. The defendant Brown entered a special appearance and moved to have process against him quashed for six asserted reasons, which need not be detailed here.

The trial court heard the demurrers and the motion to quash and filed two journal entries. In one, which is really a short opinion, the trial judge stated that looking through form to substance the second cause of action was not an action to quiet title but one in which the court was asked to hold the Act unconstitutional; that the United States constitution grants to congress the power to declare war and defend the nation and that the Act is a war measure, and what was necessary to be done rested in the sound discretion of congress and not in the court, and that the Act is constitutional as a war measure; that the Act itself sets up and provides for a court which shall have exclusive jurisdiction to determine all matters of the nature involved in the case at bar and specifically deprives all other courts of jurisdiction; that the instant action is one covered by the Act and hence the court was of opinion it did not have jurisdiction, and that the demurrers and motion should be sustained.

In the formal journal entry the court, without specification of any ground of the demurrers or of the motion to quash, sustained the demurrers and allowed the motion to quash.

Plaintiff thereafter filed a motion for a new trial and a motion to have the several rulings vacated and set aside. These latter motions were denied and plaintiff perfected his appeal to this court, his specifications of error covering the rulings on the demurrers and the motion to quash, and that the trial court erred in holding it did not have jurisdiction, in denying plaintiff's motion to set aside its findings, in denying the motion for a new trial and in rendering judgment of dismissal in favor of defendants. It may here be noted that the journal entry of judgment does not show any judgment of dismissal.

Before discussing the several contentions presented by the appellant, we direct attention to the fact that the demurrers presented no question of misjoinder of causes of action, nor is any question presented as to the right of plaintiff to maintain this action on behalf of other owners of real estate alleged to be similarly situated, and we shall not comment thereon. Neither is there any specific contention by appellees that appellant's remedy is by action in forcible detainer, of which the justice of the peace court has jurisdiction (G. S. 1935, 61-1301), and not by action in ejectment, in which the district court has jurisdiction (G. S. 1935, 60-2001). We shall assume the allegations that plaintiff is the owner in fee simple and entitled to the possession of the described real estate and that the defendants Johnson unlawfully keep him out of possession, would be sufficient to state a cause of action in ejectment, unless the Act controls and plaintiff must plead compliance with its provisions as conditions precedent to his right to maintain an action in ejectment.

The following review of the Act and of the regulations issued thereunder is not intended to be complete, but only to show provisions particularly applicable to the case at bar.

In section 1 it is declared to be in the interest of the national defense and security and necessary to the effective prosecution of the war, and the purposes of the Act are, to prevent speculative, unwarranted and abnormal increases in prices and rents . . . and to assure that defense appropriations are not dissipated by excessive prices. Section 2 deals with prices of commodities with which we are not now concerned and with rents, and (b) that whenever in the judgment of the administrator it is necessary in order to effectuate

the purposes of the Act he may issue declarations setting forth the necessity for any defense housing accommodations in any particular defense-rental area, and he may by regulation or order establish such maximum rentals as in his judgment will be generally fair and equitable and will effectuate the purposes of the Act, and so far as practicable, in' establishing any maximum rent he shall ascertain and give due consideration to the rents prevailing for accommodations on or about April 1, 1941. Under subdivision (d) of section 2 it is further provided that whenever in the judgment of the administrator such action is necessary or proper in order to effectuate the purposes of the Act, he may, by regulation or order, regulate or prohibit speculative or manipulative practices or renting or leasing practices (including practices relating to recovery of the possession) in connection with any defense-area housing accommodation, which in his judgment are equivalent to or are likely to result in rent increases inconsistent with the purposes of the Act. Subdivision (g) of section 2 provides that regulations, orders and requirements under the Act may contain such provisions as the administrator deems necessary to prevent the circumvention or evasion thereof. Section 3 deals with agricultural commodities. Section 4 (a) makes it unlawful to do certain prescribed things, including demanding or receiving any rents in violation of any regulation or order under section 2, or (b) to remove or attempt to remove a tenant because the tenant proposes to take action authorized under the Act. Subsequent sections provide for the office of administrator; who is authorized from time to time to issue such regulations and orders as he may deem necessary or proper in order to carry out the purpose of the Act, for investigations, records and reports, for procedure after issuance of any regulation or order under section 2 and for review by complaint filed with the Emergency Court of Appeals provided for in the Act. By section 204 (d) it is provided that the Emergency Court of Appeals and the Supreme Court upon review of its judgments and orders shall have exclusive jurisdiction to determine the validity of any regulation or order issued in section 2 . . . and of any provision of such regulation, order or price schedule, and—

"Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision."

We are not presently concerned with other provisions of the Act and therefore do not review them.

Under the Act the administrator issued a maximum rent regulation (No. 57, effective December 1, 1942, and in force when the instant action was commenced) one of the defense-rental areas thus created being composed of Dickinson, McPherson, Ottawa and Saline counties in Kansas, and a copy of this regulation is attached to plaintiff's petition. We shall not review the many provisions for fixing rents and for procuring alterations, changes or adjustments, and procedure in connection therewith for the present case involves none of them. Under section 1388.586 (a) it is provided that so long as he continues to pay rent no tenant shall be removed from any housing accommodation by action to evict or to recover possession, by exclusion from possession or otherwise, nor shall any person attempt such removal or exclusion from possession notwithstanding the tenant has no lease or his lease has expired or otherwise terminated, except in six specified instances, none of which applies to the case at bar. Under subdivision (b) (1) of the above section it is provided that no tenant shall be removed or evicted on grounds other than those stated unless on petition of the landlord, the administrator certifies the landlord may pursue his remedies in accordance with the requirements of local law. Under subdivision (d) (1) of the above section every notice to a tenant to vacate or surrender possession shall state the ground under the section upon which the landlord relies for removal or eviction of the tenant, and a written copy must be given the area rent office within twenty-four hours after the notice is given to the tenant. No tenant shall be moved or evicted by court process or otherwise, unless at least ten days prior to the time specified for possession and to the commencement of any action for removal or eviction the landlord has given written notices of the proposed action to the tenant and to the area rent office, stating the ground upon which removal or eviction is sought and specifying the time when the tenant is required to surrender possession.

Appellant's first contention is that the trial court erred in holding it did not have jurisdiction of the subject of the action. As has been shown above, the demurrers, which included other grounds, were sustained generally, and if any ground is good the ruling was correct.

On the question of jurisdiction we note the following: The general

purpose of the first cause of action was to eject defendants Johnson from plaintiff's real estate, and of that action the district court did have jurisdiction. The general purpose of the second cause of action was to enjoin enforcement of the Act and of the regulations issued thereunder, and whether the trial court had jurisdiction of all or any part of the matters there involved depends on the constitutionality of the Act and the validity of the regulations issued, and is discussed later. Whether the facts stated in either cause were sufficient to state a cause of action will be considered later.

Before noting other of appellant's contentions, and to avoid any misunderstanding, we point out there is no express contention that the congress, in enacting the Act failed to lay down the policies or establish the standards under which the administrator could make subordinate rules and regulations, the failure of which caused the Supreme Court of the United States to denounce the National Industrial Recovery Act of June 16, 1933. (See *Schechter Corp. v. United States*, 295 U. S. 495, 79 L. Ed. 1570, 55 S. Ct. 837, 97 A. L. R. 947.)

Although not in the order here given, appellant contends that the existence of war does not change the constitution of the United States, that the Act violates the fifth amendment of the constitution that no person shall be deprived of his property without due process of law nor shall private property be taken for public use without just compensation; that the delegation of power to the administrator under the Act is an unconstitutional and unlawful delegation of legislative power insofar as it relates to housing, and that the Act is an invasion of the province of the states and is an invasion of the rights reserved to the states under the tenth amendment.

In support of the trial court's ruling, appellees contend that under the Act, jurisdiction is expressly withheld from the state courts to enjoin or set aside the Act or any regulation thereunder, and also that having failed to allege compliance with the Act plaintiff has failed to state a cause of action. We think the contention of appellees as to jurisdiction is too broad. Without reviewing fully the provisions of the Act, it is provided that the administrator may make regulations and orders concerning prices of commodities and rentals of real estate and that there may be a review by filing complaint with the Emergency Court of Appeals, created under the Act, and that court and the Supreme Court have exclusive jurisdiction to determine the validity thereof. Attention is directed, however, to

the last sentence of section 204 (d) quoted above. Appellees contend section 204 (d) precludes any state court from determining any question of validity or constitutionality of the Act. In view of our conclusions later we need not labor the point. Although congress may have power to withhold from state courts jurisdiction over any matter within the judicial power of the United States (see the classic case of *Cohens v. Virginia,* 6 Wheat. [19 U. S.] 264, 25 L. Ed. 191) in the present instance it did not do so further than as provided in the portion of the Act as quoted above. It appears the restriction on jurisdiction pertains to regulations or orders made under the Act, and not to the Act itself. (See *Henderson v. Kimmel,* infra.) Whenever congress enacts legislation and confers jurisdiction on a court to hear and decide a case, it likewise confers jurisdiction to determine whether the Act is constitutional. (*Adkins v. Children's Hospital,* 261 U. S. 525, 544, 43 S. Ct. 394, 396, 67 L. Ed. 785, 24 A. L. R. 1238; *Smyth v. Ames,* 169 U. S. 466, 527, 18 S. Ct. 418, 426, 42 L. Ed. 819; *United States v. Butler,* 297 U. S. 1, 62, 56 S. Ct. 312, 318, 80 L. Ed. 477, 102 A. L. R. 914.) If the Act is not constitutional, the provision relied on by appellees is not good. In our opinion the trial court had jurisdiction to determine whether the Act was a valid constitutional enactment.

In support of their various contentions and in argument thereon, appellant and appellees have directed our attention to many decisions and of these, many are cumulative in character. No good purpose is to be served by making complete reference to all of these cases. A series of annotations on "Constitutionality of Emergency Price Control Act as relating to rent" may be found in 142 A. L. R. 1521, 143 A. L. R. 1533, 144 A. L. R. 1517, 145 A. L. R. 1484, 146 A. L. R. 1491, and 147 A. L. R. 1446, in which will be found most of the cases mentioned in the briefs dealing with constitutionality.

Appellant directs our attention to the grant of war powers to congress under article 1, section 8 of the United States constitution, and argues that these powers, broad as they may be, are limited by and subject to the provisions of the fifth amendment that no person shall be deprived of his property without due process of law, nor shall private property be taken for public use without just compensation. In support of his contention that the Act violates the fifth amendment, appellant directs our attention to and quotes from *Missouri Pacific Railway Company v. Nebraska,* 164 U. S. 403, 41 L. Ed. 489, 17 S. Ct. 130; *Holden v. Hardy,* 169 U. S. 366, 42 L. Ed. 780, 18

S. Ct. 383; *United States v. Butler*, 297 U. S. 1, 80 L. Ed. 477, 56 S. Ct. 312; *Old Dearborn Distributing Co. v. Seagram-Distillers Corp.*, 299 U. S. 183, 81 L. Ed. 109, 57 S. Ct. 139; *Buchanan v. Warley*, 245 U. S. 60, 62 L. Ed. 149, 38 S. Ct. 16; *Priewe v. Wisconsin State Land & Improvement Co.*, 93 Wis. 534, 67 N. W. 918, and other cases, all dealing with the right to take private property without due process of law or to take private property for public use without just compensation. None of the cases relied on arise under or are measured by the Act under consideration or by other exercise of any war power. In the case before us the question would be more the taking of private property without due process of law than of taking private property for public use without just compensation. It may here be noted that a similar contention was made and denied in *Block v. Hirsh*, 256 U. S. 135, 65 L. Ed. 865, 41 S. Ct. 458, 16 A. L. R. 165, wherein the act of October 22, 1919, regulating rents in the District of Columbia was involved; and in *Marcus Brown Co. v. Feldman*, 256 U. S. 170, 65 L. Ed. 877, 41 S. Ct. 465, wherein a statute of New York regulating rents in the city of New York was involved.

In connection with his contention the Act unconstitutionally delegates legislative power to the administrator, appellant does not point out wherein he believes the delegation is void, but he directs our attention to two cases which he states present his view. The first is *Roach v. Johnson*, 48 F. Supp. 833. The judgment in that case was set aside by the United States Supreme Court on May 24, 1943, on the ground the suit was collusive (319 U. S. 302, 87 L. Ed. 1027 [Adv. S.], 63 S. Ct. 1075). The second is *Payne v. Griffin*, 51 F. Supp. 588. The opinion is by a judge of the United States District Court of Georgia. That court was of opinion that congress has power to enact a statute controlling rents in time of war, but that congress is not authorized to delegate its power; that congress may enact a law to become effective when specified conditions come into existence and may delegate to an administrative officer the authority to determine when such conditions exist; that congress may declare the policy and fix a definite standard by which the administrator is to be controlled and authorize him to make subordinate rules, but congress cannot permit the administrator to determine what the law shall be. Without detailing the opinion further it may be said the trial judge held the Act authorizing the administrator to fix maximum rentals in a defense area was an invalid delegation of legislative power.

In connection with his contention the Act is in violation of the tenth amendment, in that the matter of rentals is one for local legislation, and not one delegated to the United States under the constitution, appellant cites *Hammer v. Dagenhart,* 247 U. S. 251, 62 L. Ed. 1101, 38 S. Ct. 529, wherein an act of congress prohibiting transportation in interstate commerce of goods produced in factories employing children, was held to exceed the commerce power and to invade the province of the states, and *Marcus Brown Co. v. Feldman,* 256 U. S. 170, 65 L. Ed. 877, 41 S. Ct. 465, where state legislation regulating rentals was held not to violate the fourteenth amendment to the United States constitution. Neither of these cases deals with the effect of the exercise of the war power and while they contain language treating of the province of the states and the exercise of reserved powers, they are not at all conclusive of the problems presently involved.

Up to this time no case involving the Act based on the grounds of attack asserted in the instant case has been decided by the Supreme Court of the United States, but a considerable number have been considered in the circuit courts of appeal and in the district courts of the United States, as well as in some state courts, as is disclosed in the A. L. R. annotations above mentioned. An examination of these cases shows that many of them cover most of the contentions made by appellant in the instant case, and that generally speaking *Roach v. Johnson* and *Payne v. Griffin,* supra, tend to substantiate his contentions, but that practically all the other decisions tend to refute them.

One of the early cases is *Henderson v. Kimmel,* 47 F. Supp. 635, decided in October, 1942. For our purposes it may be said that Kimmel, who owned an apartment house in Wichita, Kan., had rented an apartment to one Boyd, an employee of a company making airplanes. Kimmel demanded an increased rental and refused to accept rental on the basis previously paid. He then served notice of termination of tenancy, and later brought a suit in forcible detainer in the city court and obtained judgment. This judgment was vacated on the ground the notice to terminate was insufficient. Shortly thereafter Leon Henderson, as administrator under the Act, instituted action in the United States District Court of Kansas to enjoin Kimmel from directly or indirectly demanding or receiving rents in excess of that established by the maximum rent regulation, or to exclude Boyd from possession, or from bringing, maintaining,

prosecuting or continuing any acts, practices or omissions in violation of the regulations and orders pertaining to rent issued by the administrator, pursuant to the Act. By way of answer and counterclaim, Kimmel attacked the constitutionality of the Act and the regulation and sought to enjoin the plaintiff from enforcing the provisions of the Act and from interfering with the use and occupancy of her premises and with her right to invoke the jurisdiction of the state courts and pursue the remedies given by the state of Kansas, and for other relief. A three-judge court, duly constituted under the statute, convened and heard the applications for preliminary injunctions. It appeared that Kimmel had not sought relief pursuant to the provisions of the price control act. In an opinion by Phillips, circuit judge, the court held that the war power of congress is a broad and comprehensive grant, subject to the limitations of the fifth amendment but that the war power was not destroyed nor impaired by any later provision of the constitution or by any one of the amendments; that all are to be construed together so as to avoid making the constitution self-destructive, and so as to preserve the rights of citizens from unwarrantable attack while assuring beyond all hazard the common defense and the perpetuity of their liberties. The court took note that we are engaged in a global war and that no greater emergency ever confronted our nation, and said:

"In such a time a nation that may draft its young men into the armed forces to serve at a modest pay most certainly can require its citizens on the home front to make financial and other sacrifices essential to the successful defense of our country." (1. c. 641.)

and that national emergency does not create power, the war power is expressly granted, and the emergency furnishes the occasion for its exercise. The court further said:

"That rent control is necessary to the effective prosecution of the war effort is not open to doubt. It is necessary in order to prevent the disastrous effects of inflation, to protect the families of men in the armed service, to attract workers to vital defense areas, to bring about a fair distribution of essential labor among the several defense areas, and to insure defense workers of housing accommodations at rentals that are not exorbitant. In short, it is necessary to maintain civilian morale and insure the production of necessary armaments." (1. c. 642.)

It was said further that it must follow that congress has the power to regulate costs of commodities and facilities in order to insure the essential armaments, prevent defeat and insure the victory, and that the power to regulate rents had been sustained by the Supreme

Court in *Block v. Hirsh*, 256 U. S. 135, 41 S. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165. It was held the Act contains both a clear statement of a definite policy and adequate intelligible standards to guide the administrator in fixing rentals and that in such circumstances congress may constitutionally delegate to an administrative agency the power to determine details essential to carry out the legislative purpose. After some discussion of the provision for review of the orders and regulations of the administrator, the court stated it would seem the Act provides for an adequate administration and judicial review of protests and provisions for adjustment filed in behalf of a landlord. On the question of exclusive jurisdiction of the Emergency Court of Appeals and of the Supreme Court to consider validity of any regulation or order, etc., the court stated that if the Act is constitutional, the three-judge court was without jurisdiction to pass on the validity of the regulation and was limited in its consideration to the question of the constitutionality of the Act. Limits of space preclude our inclusion here of the court's comments on the general subject that exclusive jurisdiction and prohibition against restraining orders and stays by other courts than the Emergency Court of Appeals are indispensable to the successful operation of wartime rent control (1. c. 644). The court concluded that Kimmel had not exhausted administrative remedies afforded, and that it was a settled rule of judicial administration that no one is entitled to judicial relief for a supposed injury until the prescribed administrative remedy had been exhausted. The court concluded the basic Act was constitutional. Limits of space preclude a more detailed statement of questions and issues involved in the foregoing case and reference is made to the opinion for a more complete statement thereof.

In the A. L. R. annotations above referred to will be found many cases either following *Henderson v. Kimmel*, supra, or holding independently that the Act is a valid exercise of the war powers of congress; that the Act contains a definite statement of its policy and fixes adequate and intelligible standards to guide the administrator in his operations under it; that there is proper delegation of the power to control rents; and that the Act does not violate the fifth amendment or any other of the amendments and is constitutional.

Although in his petition appellant pleads that he and his tenant are civilian residents and not in the military service and therefore

the Act is unconstitutional as to them, he makes no separate argument thereon. We think it proper to make the following observations. As has been indicated in *Henderson v. Kimmel,* supra, the purpose to be served by the Act is not only to protect families of men in the armed services, it is to control housing accommodations in defense areas so as to attract workers, and to insure them housing accommodations at rentals that are not exorbitant. At first glance it would appear the national government was not concerned with purely personal rental arrangements between persons not in the armed services or engaged in some defense industry. If the Act were to be so interpreted the possibility would arise that landlords might then rent only to purely civilian tenants not under the Act and willing to pay high rents, and not to persons who would be under the Act and for rents as limited thereby, with the result that housing accommodations would be denied persons in military service or in defense industry, and the purpose of the government would be frustrated. A somewhat similar argument was made in *Jacob Ruppert v. Caffey,* 251 U. S. 264, 64 L. Ed. 260, 40 S. Ct. 141, against enforcement of the Volstead act, which prohibited not only the manufacture and sale of intoxicating liquors but certain nonintoxicating ones. In that opinion it was said that plaintiff's argument was equivalent to saying that the war power of congress to prohibit the manufacture and sale of intoxicating liquors did not extend to the adoption of such means to the end as in its judgment are necessary to the efficient administration of the law. That contention was not upheld, the court saying the power granted was a broad one to make such laws as may be required to effectually carry out the purposes of the act.

"Since congress has power to increase war efficiency by prohibiting the liquor traffic, no reason appears why it should be denied the power to make its prohibition effective." (l. c. 301.)

And so here. Assuming power to exist that rentals in defense areas may be regulated, the regulation made may be sufficiently broad that it is effective to accomplish the purpose of the Act. The Act itself contemplates such regulations. See section 2, subdivision (g) heretofore mentioned in the review of the Act.

The rule that decisions of the Supreme Court of the United States on federal questions are binding on state courts has been recognized and followed in this state. (See *Schaefer v. Lowden,* 147 Kan. 520, syl. ¶ 2, 78 P. 2d 48.) The decisions generally are in conflict

whether a state court is bound by the decisions of the lower federal courts on federal questions. (See 147 A. L. R. 857.) In *Krouse v. Lowden*, 153 Kan. 181, syl. ¶ 6, 109 P. 2d 138, it was held the interpretation placed upon a federal statute by the federal courts, and particularly by the United States Supreme Court is controlling upon state courts. We think that where the decisions of the various federal courts are in accord, the rule might well be followed, and where there is lack of unanimity, the weight of authority should be held very persuasive.

In our opinion, and it is supported by the overwhelming weight of authority, the Act is not unconstitutional for any reason asserted by the appellant. On the contrary it is a valid exercise of the war powers of congress, and fixes adequate standards for its administration. Under its terms our jurisdiction is limited, and we may not consider the validity of any regulation or order issued by the administrator of the Act, nor enjoin the enforcement thereof. If the appellant believes that such regulations or orders are unduly restrictive or arbitrary, his remedy is to follow the procedure for administrative review leading up to a hearing before the Emergency Court of Appeals, and there is no pleading or contention that he has done so.

Under Article VI thereof, the constitution and the laws of the United States made in pursuance thereof are the supreme law of the land, and judges in every state are bound thereby, anything in the laws of the state to the contrary notwithstanding. The Act and the regulations pertaining to rentals and to removal of tenants by actions to evict or recover possession are controlling here.

Without elaboration it may be said it was incumbent on plaintiff to obtain the certificate from the administrator before pursuing his remedies in accordance with the requirements of local law and that he give notices as required by the Act. These were conditions precedent to bringing the action. Under such circumstances they must be pleaded in order to state a cause of action. (See 1 C. J. 976; 49 C. J. 145; 1 Am. Jur. 426; and 41 Am. Jur. 353.) In plaintiff's first cause of action there is no allegation that he complied with the regulations with respect to obtaining the certificate from the administrator or that he gave to the tenant any notice as required by the regulations. Procurement of the certificate and the giving of the notice were conditions precedent to plaintiff's pursuing his remedies in accordance with requirements of local law and to bringing the

action in ejectment, and by reason of the failure of plaintiff to plead compliance, his first cause of action did not state facts sufficient to constitute a cause of action. Not much need be said as to the second cause of action. His attack on the Act itself is not sustained. Primarily the second cause of action is an attempt to enjoin enforcement of the regulations of the administrator, and of such an action the state court has no jurisdiction.

In view of our conclusions it is not necessary that we discuss the trial court's ruling on Brown's motion to have process against him quashed.

The judgment appealed from is affirmed.

HARVEY, J. (concurring in part, dissenting in part): I concur in affirming the trial court's ruling which sustained the several demurrers to plaintiff's petition, but would do so for these reasons: Upon facts alleged which would authorize the filing of a complaint in forcible detainer plaintiff seeks to state a cause of action in ejectment, a suit to enjoin the enforcement of the Emergency Price Control Act of 1942, (56 Stat. 23, 50 U. S. C. A. appendix, sec. 901 *et seq.*), and an action to quiet title on behalf of himself and fifty-eight other people. A petition so confused in theory states no cause of action. It is not essential that much more be said in disposing of this appeal.

If the Emergency Price Control Act of 1942 and the administrator's regulations under it are deemed to be before the court for their validity to be determined, which in my judgment they are not, I wish to express my views as they pertain to this action and also as they pertain to *Morrison v. Hutchins* and *Bell v. Dennis,* both of which are this day decided, as follows: That an act of congress takes precedence over our state laws; that the war powers of congress are as extensive as their need exists, of which congress is the judge, and that the Emergency Price Control Act of 1942 was enacted by congress in the exercise of such powers, and therefore that the statute is valid. There is some conflict in the holding of the federal district court respecting the validity of that portion of the Act which attempts to authorize the administrator to make maximum rent regulations. Compare *Henderson v. Kimmel,* 47 F. Supp. 635, with *Payne v. Griffin,* 51 F. Supp. 588 (now pending in the court of appeals), and *Brown v. Willingham,* 51 F. Supp. 597 (now pending in the Supreme Court with Bowles substituted as plaintiff). But with that conflict I am not concerned.

It is my view that the administrator has authority to make regulations of the character which the statute authorizes him to make. It seems clear to me that the administrator has no authority to go beyond the powers given him by the statute and to make regulations with respect to additional matters not contemplated by the framers of the Act, and indeed excluded by the provisions of the Act. I refer to the regulations of the administrator respecting actions for possession of real property under local law, and particularly to the one requiring consent of the administrator to maintain such an action.

The Emergency Price Control Act was introduced in the House of Representatives and referred to its committee on banking and currency, which held extensive hearings on the bill at various dates from August 7 to October 23, 1941. It passed the House November 28, 1941. In the Senate it was referred to the committee on banking and currency, which conducted hearings on the bill from December 9 to December 17, 1941. In the meantime Pearl Harbor had happened and war had been declared with Germany, Italy and Japan, as a result of which the bill was amended and strengthened in several particulars. It was passed by congress and approved January 30, 1942. The hearings conducted by the House committee are reported in two volumes, aggregating more than 3,000 pages. The hearings before the Senate committee are reported in one volume of 560 pages. The general purposes of the Act were to stabilize and hold in status quo, as nearly as possible, the prices of all essential commodities and wages for the more successful prosecution of the war and to avoid inflation, which would greatly increase the cost of the war and otherwise be economically detrimental. In this respect rent was treated as a commodity; that is, the cost of rent—the price one would have to pay for housing accommodations. Substantially increased rents would increase the cost of living, would have a direct bearing upon wages and the cost of production, and in congested defense areas inflation of rent would seriously handicap the procuring of housing accommodations for workmen. The hearings covered the wide field of practically all salable commodities having to do with the war effort. Rents were mentioned relatively few times, and then with reference to the amount of rent. Aside from the amount of the rent the discussion touched upon but two points which can be said to have any bearing upon the relation of landlord and tenant or the right of the property owner to pursue any type of a possessory action with respect to his property. It was

suggested in the discussion that some owners of property might seek to get rid of a tenant for the reason that the tenant sought to avail himself of the regulations of the administrator with respect to the amount of rent, and upon that point the statute reads:

"Sec. 4 (b). It shall be unlawful for any person to remove or attempt to remove from any defense-area housing accommodations the tenant or occupant thereof or to refuse to renew the lease or agreement for the use of such accommodations, because such tenant or occupant has taken, or proposed to take, action authorized or required by this act or any regulation, order, or requirement thereunder."

One other suggestion was that some owners of property might, through some type of speculative or manipulative practices, attempt to evade the maximum rent regulation of the administrator. With respect to that the statute provides:

"Sec. 2 (d). Whenever in the judgment of the Administrator such action is necessary or proper in order to effectuate the purposes of this act, he may, by regulation or order, regulate or prohibit . . . speculative or manipulative practices or renting or leasing practices (including practices relating to recovery of the possession) in connection with any defense-area housing accommodations, which in his judgment are equivalent to or are likely to result in price or rent increases, as the case may be, inconsistent with the purposes of this act."

Aside from those two matters there is no provision in the Act authorizing the administrator to interfere with the ordinary business practices of owners of real property, nor the rights of such owners under local law. In fact, the statute specifically excludes such power. It reads:

"Sec. 2 (h). The powers granted in this section shall not be used or made to operate to compel changes in the business practices, cost practices or methods, or means or aids to distribution, established in any industry, except to prevent circumvention or evasion of any regulation, order, price schedule, or requirement under this act."

The statute further provides (sec. 4 [d]):

"Nothing in this act shall be construed to require any person to sell any commodity or to offer any accommodations for rent."

The question under what circumstances the owner of real property may bring an action for its possession seems to me to be decidedly distinct from the question of how much rent he should charge for the property if it is rented. The Judicial Council of this state, in its October, 1943, *Bulletin,* published data collected from many of the courts of the state, including city courts in cities of the state

where they exist. This report shows that in those city courts 926 unlawful detainer actions were brought within the year ending June 30, 1943. These reports do not cover some defense areas of the state where such actions would be brought in county or justice of the peace courts. I think it conservative to assume that as many as 1,200 such actions were brought in such areas within the year. These do not include actions for ejectment or proceedings for writ of assistance in equity cases brought in the district court. It seems inconceivable to me that the property owner in each of those cases should be required to get the consent of the administrator of the Emergency Price Control Act before he could bring such an action, or should be required to plead and prove that certain notices had been given to the administrator. In my judgment the Emergency Price Control Act did not authorize the administrator to make a requirement of that kind. As further evidence of that it may be noted that the "District of Columbia Emergency Rent Act," 55 Stat. 788, enacted by the same congress and approved December 2, 1941, referred to on several occasions in the committee hearings of the Emergency Price Control Act, contained a provision (sec. 5 [b]) prohibiting an action or proceeding to recover possession of housing accommodations so long as the tenant continues to pay rent unless one of four designated conditions existed. All of that was omitted from the Emergency Price Control Act of 1942, which act contains no limitation with respect to bringing possessory actions for real property.

The Emergency Price Control Act of 1942 contemplates that actions may be brought in the state or federal courts, in which the plaintiff or the defendant may rely in whole or in part upon the provisions of the act, and with respect to such actions the administrator is authorized to intervene.

The administrator may collect data and information of various kinds and from various sources, may require landlords and others to keep books, and to make reports, but the Act gives him no authority to attempt to control every action in a state court designed for the possession of real property.

It may be suggested that the Emergency Price Control Act provides a remedy for any owner of real property who desires to bring a possessory action by first applying to the administrator for permission, and if the protest is refused to file a complaint with the emergency court, and if the ruling there is adverse to seek cer-

tiorari in the Supreme Court. That procedure is proper for the general rent designation of a defense area. We think it never was intended to apply to the ordinary possessory action in a state court. Since congress never authorized the administrator to make regulations pertaining to such actions, no suitable provision was made for its review. As a practical matter, the time limit provided by the statute would bar the procedure in most cases. The time necessary to conduct the procedure would destroy the very purpose of these ordinary unlawful detention actions, which have always been more or less summary. Frequently the amount involved in them is small and would not warrant the expense of a procedure outlined by the Act. In short, it is a wholly inadequate remedy for the ordinary unlawful detainer action.

I therefore dissent from that part of the opinion holding that one who desires to bring an action for the possession of real property can do so only under circumstances outlined by the administrator or must first get the consent of the administrator before bringing such an action. I also dissent from the holding that notice to the administrator of the action is a condition precedent which must be alleged and proved.

SMITH, J., concurs in the views expressed by Mr. Justice Harvey.