### DE BOBULA v. COPPEDGE et al.

### No. 232.

Municipal Court of Appeals for the District of Columbia.

Dec. 14, 1944.

Rehearing Denied Dec. 28, 1944.

Samuel W. McCart, of Washington, D. C., for appellant.

Leslie C. Garnett, of Washington, D. C. (Karl Kindleberger, of Washington, D. C., on the brief), for appellees.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

Plaintiffs obtained at the hands of a jury a verdict for possession of dwelling property. Their suit was based upon the claim that they desired the property for their immediate personal use as a dwelling, this being one of the grounds which under the Emergency Rent Act [1] entitles an owner to possession. In this appeal defendant assails the judgment on several grounds.

1. The complaint did not allege that the proceeding was "in good faith" and defendant urges that the suit should have been dismissed because of that omission. The Rent Act does not require good faith to be alleged in the complaint and we have no right to hold that a complaint without such allegation is bad, either on procedural or jurisdictional grounds. To do so would be to read into the Act words that are not there and to introduce into landlord-tenant cases a formality not sanctioned by the rules of the trial court or by

---

[1] Code 1940, § 45—1601 et seq.

any decisions in this jurisdiction.[2] The test is not, of course, whether the landlord's good faith is alleged in the pleadings but whether it is established by evidence at the trial. Compare Goldberg v. Roumel, Mun.App.D.C., 40 A.2d 253. Appellant cites two state cases [3] which are not in point because they deal with the necessity of alleging and proving advance notice to the tenant and to the Price Administrator, and do not discuss the question now before us. He also cites a California case [4] in which the court reached a decision opposite to that we have announced. We cannot follow it because it seems completely out of harmony with our local decisions, including Creel v. Adams, supra. Also it is repugnant to the tradition and spirit of informality which have prevailed in our landlord-tenant court through the years, and which the court itself has twice sought to preserve in recent years by still further informalizing the practice by highly simplified rules of procedure—once in 1939,[5] and again just a little over two months ago,[6] when the rules of the new consolidated Municipal Court were adopted pursuant to Congressional authority. Significant among these are Rule 4 which relieves the defendant of filing responsive pleadings and provides that "all pleadings shall be so construed as to do substantial justice"; Rule 9 (c) which stresses conciliation procedure, informality in the hearing, and the duty of the judge to elicit matters of defense, and Rule 13 which prescribes a standardized form of complaint. These rules were obviously based upon the rules and techniques theretofore followed in the small claims branch of the court, in which so many litigants appear without attorney, and where strictness is not observed, either in the pleadings or in trial procedure.[7]

■ 2. Appellant next contends that there should have been a directed verdict at the end of plaintiff's case. By putting on evidence, he waived that point. Rogers v. District of Columbia, Mun.App.D.C., 31 A.2d 649; Boyer v. United States, Mun. App.D.C., 40 A.2d 247.

■ 3. He did, however, renew the motion at the end of all the evidence and we think the trial judge was correct in overruling it. Plaintiffs' evidence tended to show that they (Mary Coppedge in her own behalf, and Helen Macondray as guardian of two daughters aged nineteen and twenty, respectively) owned the property. Mrs. Macondray, the wife of a Navy captain stationed here, was then living at a Virginia estate which had for years been the family home. She closed it in the winter months because of expense of operation, difficulty of obtaining fuel and servants, and inaccessibility to the city of Washington where she is doing war work. She also owned a large house in the Georgetown section which however, she said was only partially furnished and too expensive to occupy and was on the market for sale. She also admitted that she owned the house adjoining the one in suit but could not select it as a dwelling because it was out of repair. She also admitted that she had not inspected the house involved in this suit since 1940; that "it is still for sale", but must be sold together with the adjoining property. She explained that she expected to obtain the furnishings for the house from her Georgetown home, and to occupy it with her two minor daughters and her married daughter (the co-plaintiff, Mrs. Coppedge) whose husband was then on foreign duty with the Navy. She explained how the space could be divided for sleeping purposes. Mrs. Coppedge testified that when she returned to Washington in April of this year she discussed with her mother her desire to have the property as her Washington home; that she proposed to put it in repair and make it livable; that she would live there with her mother and sisters and that if her mother left the city she and her sisters would keep it for their home.

Defendant's testimony was devoted al-

[2] See Creel v. Adams, 49 App.D.C. 306, 265 F. 456; Hamilton v. United States, 78 U.S.App.D.C. 316, 140 F.2d 679; Pannell v. Bayne, 56 App.D.C. 240, 12 F. 2d 181; Yellow Cab Co. v. Ekendahl, Mun.App.D.C., 34 A.2d 36.

[3] Kappa Sigma Fraternity v. Alpha Kappa Kappa Fraternity, La.App., 18 So. 2d 66; Ritchie v. Johnson, 158 Kan. 103, 144 P.2d 925; see also companion case Morrison v. Hutchins, 158 Kan. 123, 144 P.2d 922.

[4] Lester v. Isaac, Calif., 146 P.2d 524.

[5] See Landlord and Tenant Rules, effective October 1, 1939.

[6] See Rules effective October 2, 1944.

[7] Hodgkins v. Beckner, Mun.App.D.C., 32 A.2d 113; Interstate Bankers Corporation v. Kennedy, Mun.App.D.C., 33 A. 2d 165; Marvin's Credit v. Kitching, Mun.App.D.C., 34 A.2d 866.

most entirely to a recital of the bad condition of the house and the disputes and litigation in court and before the Rent Administrator between him and plaintiffs' real estate agent over the question of repairs. He revealed that he had sued the agent for damages on 33 grounds involving repairs; that he had consistently refused to pay rent because of the agent's refusal to make repairs and that he had submitted to "innumerable" suits for possession on that ground; and that all these suits, including the one he filed, had been decided against him. We may mention parenthetically that the Rent Administrator had decided the duty to make repairs was on the tenant under a certain written agreement.

Looking at the testimony as a whole, did it make a case for jury consideration or should the trial judge have decided as a matter of law for defendant? Could the trial judge properly have said, and can we now say, that plaintiffs did not require the property for their own use or that they had filed the suit in bad faith? We have had occasion to pass on such disputes when they involved strictly legal questions [8] and we need not repeat here what was said in those earlier cases. Here the substantive questions are not involved. The case was submitted to the jury under instructions presumably correct, because the accuracy of the judge's charge was not and is not questioned. The real question is whether there was sufficient evidence to submit to the jury. We think there was and that the contentions appellant presents here were answered by the jury's verdict. Appellant's counsel had the right, and undoubtedly exercised it, to argue to the jury that the plaintiffs were not acting in good faith because they had other more suitable properties available, or because this particular house was not large enough for their needs, or because they were merely attempting to rid themselves of a litigious tenant, or upon any other proper grounds. Such arguments may or may not have appealed to the jury. Seemingly this jury was not sufficiently impressed with the arguments to deny the plaintiffs the right to occupy their own property. There being substantial evidence to support their verdict we cannot disturb it. As we said in an earlier case:[9]

"We do not say that plaintiff made out a perfect, unassailable case, or one which was proven to a scientific demonstration. Nor was he required to do so in order to get to the jury."

■ 4. Plaintiff, Helen T. Macondray, sued as "guardian" of her two minor children. She had been appointed such guardian by the Courts of Virginia. She had also been appointed ancillary guardian by the United States District Court for this District. Appellant urges that she should have sued as ancillary guardian and not under her original appointment. He cites no authority to support his contention, and we find no local decisions on the point.[10] Nor does our guardianship statute prohibit such action, directly, or by inference.[11] Consequently we think it clear that plaintiff had the right to sue in her official capacity. As such she was both natural and legal guardian of her daughters. If the judgment below had been adverse to her it would have been res judicata against her both as guardian and as ancillary guardian. Furthermore she is still amenable to the orders and decrees of the District Court and answerable for any misconduct as guardian which may affect her children or creditors. Appellant has no ground for complaint on this score.

We have studied the record and find it free of error on the grounds we have discussed as well as certain other grounds advanced by appellant.

Affirmed.

[8] Shaffer v. Bowes, Mun.App.D.C., 31 A.2d 690; Colwell v. Stonebraker, Mun. App.D.C., 31 A.2d 866; Downs v. Karsh, Mun.App.D.C., 33 A.2d 620; Abbott v. Fant, Mun.App.D.C., 38 A.2d 618.

[9] Lohse v. Coffey, Mun.App.D.C., 32 A. 2d 258, 261.

[10] See Bunce v. Bunce, 14 N.Y.S. 659 which holds that an ancillary guardian may sue in his own name.

[11] See Code 1940, § 21—116.