(564 P.2d 552)

No. 48,249

Lewis G. Allen, *Appellant,* v. Edna C. Craig, County Treasurer of Johnson County, Kansas; William B. Springer, Robert R. Davis, and John J. Franke, Jr., County Commissioners of Johnson County, Kansas; *et al., Appellees.*

Petition for review denied June 15, 1977.

Opinion filed May 6, 1977.

*Lewis G. Allen,* of Lenexa, *pro se.*

*Bruce F. Landeck,* of Lowe, Terry & Roberts, of Olathe, and *Lyndus A. Henry,* county counselor, for appellees.

Before Harman, C.J., Rees and Spencer, JJ.

Rees, J.: The nature of this action is stated by plaintiff in his brief to be as follows:

"This is an action for a Declaratory Judgment that the Constitution of the United States and the Constitution of the State of Kansas commands that State officers accept gold and silver coin or paper which is equivalent thereof, and Constitutionally the State is forbidden from accepting any other Thing as Tender in Payment of Debt and,

"Plaintiff-Appellant also is requesting Injunctive relief requiring State or County officials to accept no Thing other than gold and silver Coin or Paper which is equivalent."

The trial court dismissed for lack of jurisdiction over the subject matter and plaintiff has appealed.

The salient facts may be briefly stated. Plaintiff is a resident and owner of real and personal property situated in Johnson County. He duly received 1974 personal property and real estate tax statements in a total amount of $7,663.24. On February 14, 1975, after an exchange of correspondence with the county treasurer and the county counselor concerning payment of his taxes, he wrote to the county treasurer. In his letter he set forth his computation of his tax obligation for payment of first-half taxes. (The fact that he was then delinquent as to payment of first-half taxes and payment in full was due is not material to the issues raised in this action.) According to his computation, his tax liability, including penalty and automobile license fees, was $3,954.95 ($4,000.00 for the purpose of our consideration). Enclosed with his letter was a personal check drawn by him on a local bank in the amount of $800.00, on which was typed "NOTICE: PAY SILVER DOLLARS ONLY." In his letter he stated:

". . . I am submitting payment for my taxes in statutory dollars and in accordance with the United States Constitution.

"As I have stated before, I am quite ready to pay lawful taxes with lawful money. . . .

"My research indicates that the fair market value of a Federal Reserve Note is at a ratio of 5:1 or 5 FRN's to 1 Silver Dollar.

. . . . . . . . . . . . . . . . .

"My check is payable in silver dollars. I have tendered honest and lawful payment. I will consider my taxes duly paid."

The presentation of the check had the effect of a tender of 800 silver dollars. The treasurer declined to accept plaintiff's tender in satisfaction of the $4,000 tax obligation. The check was returned and this litigation began. In addition to the county treasurer and county commissioners, the governor, the state attorney general and the state treasurer were made defendants. The action was dismissed as to the last three defendants; they were made parties to an action in Shawnee County, and they are not parties to this appeal.

Plaintiff contends as matters of fact that present day federal reserve notes have no intrinsic value and essentially are worthless, and that silver dollars have a value to some persons, *e.g.,* collectors, at a multiple of their face value.

No issue is raised as to the lawfulness and amount of tax imposed upon plaintiff. The questions at issue arise out of plain-

tiff's contentions that he is constitutionally prohibited from making payment of taxes in federal reserve notes; that the county treasurer has required him to violate the United States Constitution by refusing to accept silver dollars other than on a dollar for dollar basis; that to the extent the county treasurer has required him to pay by the use of federal reserve notes he has been required to violate the United States Constitution; and that the county treasurer's actions, taken as an officer of a subdivision of the state, constitute violations of Article I, Section 10, of the United States Constitution, and Article 2, Section 7, of the Kansas Constitution. Also, at the heart of plaintiff's arguments is the delegation of powers to the Congress expressed in Article I, Section 8, of the United States Constitution.

In order that they may be before us, the particular constitutional provisions material to plaintiff's arguments are as follows:

"The Congress shall have Power . . . To coin Money, regulate the Value thereof, . . ." U. S. Const. art. I, sec. 8.

"No State shall . . . emit Bills of Credit; make any Thing but gold and silver a Tender in Payment of Debts;. . ." U. S. Const. art. I, sec. 10.

"All state officers before entering upon their respective duties shall take and subscribe an oath or affirmation to support the constitution of the United States . . ." Kan. Const. art. 2, sec. 7.

Plaintiff's argument is multi-faceted and includes a plethora of references. As will be indicated elsewhere in this opinion, others sharing plaintiff's beliefs and convictions have raised the same fundamental questions in recent years. Their theses have been universally rejected.

The trial court's journal entry includes a finding that plaintiff's petition raises federal questions which are not subject to determination by state courts. However, we are uncertain as to what federal questions were deemed by the trial court to be outside its jurisdiction. Defendants have furnished us little assistance in that they seemingly argue that without limitation there is no state court jurisdiction over federal questions.

We turn first to an examination of what constitutes jurisdiction and then to an examination of whether this litigation meets the requirements imposed for the exercise of jurisdiction by our state courts.

Jurisdiction is defined as the power of a court to hear and decide a matter. The test of jurisdiction is not a correct decision

but a right to enter upon inquiry and make a decision. Jurisdiction is not limited to the power to decide a case rightly, but includes the power to decide it wrongly. *In re Estate of Johnson,* 180 Kan. 740, 308 P. 2d 100; *Fincher v. Fincher,* 182 Kan. 724, 324 P. 2d 159; *McFadden v. McFadden,* 187 Kan. 398, 357 P. 2d 751.

The term "federal question" is usually defined by reference to 28 U.S.C. Sec. 1331, one of the statutes prescribing original jurisdiction of the federal district courts. By that definition, a federal question is involved in a civil action wherein the matter in controversy arises under the Constitution, laws or treaties of the United States.

We are satisfied that the courts of this state have subject matter jurisdiction of federal questions, as that term is defined above, absent exclusion of jurisdiction. Representative of federal question litigation in the courts of our state is the virtual flood of cases seeking enforcement of rights asserted under the United States Constitution and the vast number of cases relying upon enforcement of federal statutory law.

*Whitmer v. House,* 198 Kan. 629, 426 P. 2d 100, and *Ritchie v. Johnson,* 158 Kan. 103, 144 P. 2d 925, are cases in which our supreme court has held that subject matter jurisdiction of the state courts is excluded.

In *Whitmer,* one of plaintiffs' claims was that defendants' conduct was in conflict with the federal Uniform Time Act of 1966. The opinion noted that the act contains a provision that specifically designates the federal district courts as the proper forum for enforcement of the act and expressly declares the governing procedure in such proceedings. Although there is authority to the contrary (*Mich. Farm Bureau v. Secy. of State,* 379 Mich. 387, 151 N.W. 2d 797 [1967]), it was stated that it appeared that state courts are excluded from jurisdiction to adjudicate violations of the act. The holding of lack of jurisdiction of the subject matter was based upon a determination that the provisions of the federal law excluded state court jurisdiction.

In *Ritchie,* the federal Emergency Price Control Act of 1942 was before the court. In regard to a challenge of the administration of that law, it was said:

". . . By section 204 (d) it is provided that the Emergency Court of Appeals and the Supreme Court upon review of its judgments and orders shall have exclusive

jurisdiction to determine the validity of any regulation or order issued . . . and—

"'Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation [or] order . . . or to restrain or enjoin . . . enforcement. . . .'" (p. 109.)

". . . Under [the Act's] terms our jurisdiction is limited, and we may not consider the validity of any regulation or order issued by the administrator of the Act, nor enjoin the enforcement thereof. If the appellant believes that such regulations or orders are unduly restrictive or arbitrary, his remedy is to follow the procedure for administrative review leading up to a hearing before the Emergency Court of Appeals. . . ." (p. 118.)

The *Ritchie* case also is authority for holding that the jurisdiction of the courts of our state extends to a constitutional challenge of federal statutes.

". . . Although congress may have power to withhold from state courts jurisdiction over any matter within the judicial power of the United States (see the classic case of *Cohens v. Virginia,* 6 Wheat. [19 U.S.] 264, 25 L. Ed. 191) in the present instance it did not do so further than as provided in the portion of the Act as quoted above. It appears the restriction on jurisdiction pertains to regulations or orders made under the Act, and not to the Act itself. . . . If the Act is not constitutional, the provision relied on by appellees is not good. In our opinion *the trial court had jurisdiction to determine whether the Act was a valid constitutional enactment."* (p. 112.) (Emphasis supplied.)

Further, *Ritchie* aptly expresses the precedential effect to be given decisions of the federal courts and the binding effect of the Constitution and laws of the United States, in the following language:

"The rule that decisions of the Supreme Court of the United States on federal questions are binding on state courts has been recognized and followed in this state. (See *Schaefer v. Lowden,* 147 Kan. 520, syl. 2, 78 P. 2d 48.) The decisions generally are in conflict whether a state court is bound by the decisions of the lower federal courts on federal questions. (See 147 A.L.R. 857.) In *Krouse v. Lowden,* 153 Kan. 181, syl. 6, 109 P. 2d 138, it was held the interpretation placed upon a federal statute by the federal courts, and particularly by the United States Supreme Court is controlling upon state courts. We think that where the decisions of the various federal courts are in accord, the rule might well be followed, and where there is lack of unanimity, the weight of authority should be held very persuasive.

. . . . . . . . . . . . . . . . . . . .

"Under Article VI thereof, the constitution and the laws of the United States made in pursuance thereof are the supreme law of the land, and judges in every state are bound thereby, anything in the laws of the state to the contrary notwithstanding. . . ." (pp. 117-118.)

In *Morrison v. Hutchins,* 158 Kan. 123, 144 P. 2d 922, a companion case to *Ritchie,* it is held:

"The constitution and laws of the United States made in pursuance thereof are the supreme law of the land (U. S. Const. art. VI) and are binding upon state as well as federal courts. (*Claflin v. Houseman, Assignee,* 93 U.S. 130, 23 L. Ed. 833, 838.) . . ." (p. 126.)

By reason of 31 U.S.C. Sec. 463, the treasurer was required to accept plaintiff's tender of payment in silver dollars only on a dollar for dollar basis. Section 463 provides as follows:

"(a) Every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts. Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is hereby repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law.

"(b) As used in this resolution, the term 'obligation' means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States; and the term 'coin or currency' means coin or currency of the United States, including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations. (June 5, 1933, c. 48, Sec. 1, 48 Stat. 113.)"

The refusal of the treasurer to accept plaintiff's silver dollars on a basis other than dollar for dollar and acceptance by her of federal reserve notes for payment of taxes did not violate Article I, Section 8, of the Constitution of the United States. Such conduct of the treasurer is not *state* action that makes any thing other than gold and silver coin tender in payment of debts. It is action of the federal government that makes federal reserve notes legal tender.

Legal tender for payment of public and private debts is defined by Title 31 U.S.C. Sec. 392 as follows:

"All coins and currencies of the United States (including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations), regardless of when coined or issued, shall be legal tender for all debts, public and private, public charges, taxes, duties, and dues. (July 23, 1965, P. L. 89-81, Title I, Sec. 102, 79 Stat. 255.)"

In view of the fact that the county treasurer and the courts of this state are bound by the foregoing federal statutes, the remaining issue is the constitutionality of those federal statutes. As

we have pointed out above, we are bound by the decisions of the United States Supreme Court.

The power to declare what shall be money and to regulate its value is vested in the Congress. *Norman v. B. & O. R. Co.,* 294 U.S. 240, 79 L. Ed. 885, 55 S. Ct. 407 (1935). It has been decided that the Congress has the constitutional power to make paper money legal tender in payment of debts. *Juilliard v. Greenman,* 110 U.S. 421, 28 L. Ed. 204, 4 S. Ct. 122 (1884). Therefore, determination of the constitutionality issue would require judicial review of the actions of Congress in the exercise of its powers.

The constitutionality of Title 31, Sec. 392 and Title 31, Sec. 463 was before the United States Supreme Court in *Guaranty Trust Co. v. Henwood,* 307 U.S. 247, 83 L. Ed. 1266, 59 S. Ct. 847 (1939), where it was held:

". . . These bonds and their securing mortgage were created subject not only to the exercise by Congress of its constitutional power to 'coin money, regulate the value thereof, and of foreign coin,' but also to 'the full authority of the Congress in relation to the currency.' The extent of that authority of Congress has been recently pointed out: 'The broad and comprehensive national authority over the subjects of revenue, finance and currency is derived from the aggregate of the powers granted to the Congress, embracing the powers to lay and collect taxes, to borrow money, to regulate commerce with foreign nations and among the several States, to coin money, regulate the value thereof, and of foreign coin, and fix the standard of weights and measures, and the added express power "to make all laws which shall be necessary and proper for carrying into execution" the other enumerated powers.'

"Under these powers, Congress was authorized—as it did in the Resolution—to establish, regulate and control the national currency and to make that currency legal tender money for all purposes, including payment of domestic dollar obligations with options for payment in foreign currencies. Whether it was 'wise and expedient' to do so was, under the Constitution, a determination to be made by the Congress. . ." (p. 259.)

In *Juilliard v. Greenman,* supra, it also was held:

". . . [T]he question whether at any particular time, in war or in peace, the exigency is such, by reason of unusual and pressing demands on the resources of the government, or of the inadequacy of the supply of gold and silver coin to furnish the currency needed for the uses of the government and of the people, that it is, as matter of fact, wise and expedient to resort to this means, is a political question, to be determined by Congress when the question of exigency arises, and not a judicial question, to be afterwards passed upon by the courts. . . ." (p. 450.)

The wisdom and expediency of the actions of Congress which are the subject of the matter in controversy before us do not

constitute a judicial question but rather a political question over which the judiciary has no jurisdiction. Accordingly, the trial court correctly held that it had no jurisdiction over the subject matter.

We noted earlier that there has been litigation in other courts concerning this same general subject matter. All such litigation found in our limited research has been determined contrary to plaintiff's position. The cases have been disposed of either by judgment on the merits or by dismissal for failure to state a claim upon which relief can be granted. For the benefit of the interested reader, included among such cases are the following: *Leitch v. State, Department of Revenue,* 16 Or. App. 627, 519 P. 2d 1045 (1974); *Radue v. Zanaty,* 293 Ala. 585, 308 So. 2d 242 (1975) (a case strikingly similar to the one before us); *Chermack v. Bjornson,* 223 N.W. 2d 659 (Minn. 1974); *Rush v. Casco Bank & Trust Company,* 348 A. 2d 237 (Me. 1975); *Brubrad Company v. United States Postal Service,* 404 F. Supp. 691 (E.D.N.Y. 1975); and *United States v. Wangrud,* 533 F. 2d 495 (9th Cir. 1976).

Were we to decide plaintiff's case on the merits, we could well hold the Ninth Circuit decision in the *Wangrud* case to be controlling. On the issue at hand, the opinion in that case was as follows:

". . .[T]he defendant received checks from the State Farm Insurance Company as compensation for his services. He now argues that he did not receive money, since the checks could be cashed only for federal reserve notes and that these are not redeemable in specie. We publish this opinion solely to make it clear that this argument has absolutely no merit. We affirm this conviction.

"By statute it is established that federal reserve notes, on an equal basis with other coins and currencies of the United States, shall be legal tender for all debts, public and private, including taxes. 31 U.S.C. Sec. 392 (Supp. 1976). This statute is well within the constitutional authority of Congress. U.S. Const. art. I, sec. 8. It so completely disposes of appellant's argument that it is unnecessary for us to invoke other provisions of the Internal Revenue Code which would be equally dispositive, . . ." (pp. 495-496.)

In his brief and at argument, plaintiff has objected that he was wrongfully denied jury trial. The short answer is that since there is no jurisdiction of the subject matter, there is nothing to be tried to a jury.

The trial court dismissal for lack of jurisdiction over the subject matter is affirmed.