No. 44,721

Ned Whitmer, Floyd McDaniel, James L. Moore, Maurice Townsend, Gene Light, Flo L. Collins, Loyse Arend, Leonard Coon, Kepple Disney, Hugh Errington, O. A. Wiseman, Wilbur G. Enfield, Leo W. Stephens, Albert Birkholtz, Jim Yarger and Phay M. Hussey, *Appellants*, v. Harlan House, Lloyd Fairbanks, William A. Rhoads, As County Commissioners of Sherman County, Kansas; Clayton Burton, As Mayor of the City of Goodland, Kansas; Carl Hurd, Wade Barnett, William Higdon, Don Baldwin, LeRoy Fixen, Al Thomas, Earl Reed, Robert McEvoy, All as City Councilmen of the City of Goodland, Kansas, *Appellees*.

(426 P. 2d 100)

Opinion filed April 8, 1967.

L. F. Cushenbery, of Oberlin, argued the cause, and *Elmo Lund*, of Oberlin, was with him on the briefs for the appellants.

*Selby Soward*, of Goodland, and *Clarence Bender*, of Hays, both argued the cause, and were on the briefs for the appellees.

The opinion of the court was delivered by

Kaul, J.: This is an action by a group of citizens of Sherman County (plaintiffs-appellants) seeking an injunction to prevent the

Board of County Commissioners of that county and the Mayor and City Council of Goodland (defendants-appellees) from allegedly attempting to establish Central Standard Time in the respective county and city.

Sherman County is within the Mountain Standard Time zone, as established pursuant to the United States Standard Time Act of 1918 (15 U. S. C. A. § 261, *et seq.*), and Mountain Standard Time was in common use throughout the county. The eastern boundary of the Mountain Standard Time zone is about 130 miles east of Goodland, the county seat of Sherman. It is conceded, railroads operating in the area excepted, that in most of the counties of northwest Kansas including Cheyenne, directly to the north of Sherman, and Thomas, directly to the east, although geographically located within the Mountain Standard Time zone, Central Standard Time has been observed for many years. Counsel could not explain the origin of this situation, and we are unable to supply it.

This appeal is from a summary judgment entered by the trial court in favor of defendants.

The facts are not in dispute. The minutes of the Board of County Commissioners for April 20, 1965, reflect the following:

"A resolution was made that the Sherman County Court House Employees and the County Highway Department go on Central Standard Time at 1:00 a. m. April 25, 1965. We recommend that the City Council, all business and citizens of Sherman County do likewise."

The resolution of the City Council of Goodland was adopted on April 21, 1965, as follows:

"RESOLVED that the Governing Body of the City of Goodland, Sherman County, Kansas, change to Central Standard Time at 1:00 a. m., April 25, 1965. Said time change to be for the employees at the City Building, Light Plant, Water, Street, Park and Sewer Departments; with a request that businesses and citizens switch to Central Standard Time. Motion carried, all voting yea."

The gist of plaintiffs' contentions are stated in paragraphs six and seven of their petition as follows:

"Plaintiffs further state and allege that said attempted action to adopt Central Standard Time for Sherman County, Kansas, by the defendants is an arbitrary, unreasonable, capricious and unlawful act for the reason that the Congress of the United States, by duly enacted legislation, has empowered the Interstate Commerce Commission to fix and adopt time zones, all of which was known to the defendants, and that the legally fixed and adopted time for Sherman County, Kansas, according to law, is Mountain Standard Time. That said defendants have no lawful authority to adopt any other time than Mountain Standard Time for Sherman County, Kansas.

"Defendants *sic* [Plaintiffs] further state that they have no adequate remedy at law and that the attempt by said defendants to arbitrarily adopt Central Standard Time for Sherman County, Kansas, has resulted in inconvenience, confusion, conflict, economic loss and disturbance of orderly procedure in business affairs. That if the County Commissioners of each county in Kansas were permitted to adopt as the official time such time as might be desired by said County Commissioners, that utter chaos would result."

In their prayer for relief plaintiffs ask that the attempted acts of defendants be declared null and void and that defendants be perpetually enjoined from attempting to adopt Central Standard Time as legal time for Sherman County, Kansas.

In its answer the defendant Board of County Commissioners denied the allegations of paragraphs six and seven of plaintiffs' petition and allege that the laws of the United States, with reference to time zones set out in plaintiffs' petition, apply only to interstate commerce and that pursuant to K. S. A. 19-2601 it had the duty and obligation to establish the hours for county officers and county employees in Sherman County, and that the resolution alluded to in plaintiffs' petition and admitted by the Board, was done within the scope of authority by defendant in its capacity as the Board of County Commissioners of Sherman County, Kansas.

The answer of the Mayor and City Councilmen of Goodland, with reference to city offices and employees, was substantially the same as that of the Board of County Commissioners, as related to county offices and employees.

Defendants and plaintiffs both filed motions for summary judgment. It appears to be conceded that the issue, as framed by the pleadings, could properly be disposed of in such manner.

The trial court held as follows:

". . . under the opinion of this Court, the Federal Law does not apply. There is nothing in the acts of the Board of County Commissioners, or the Mayor, or the City Council of the City of Goodland, in enacting the resolution, or ordinance and proper resolution, that they are attempting to fully enforce such a resolution upon all the people in the County. They simply, in my opinion, acting lawfully in passing a resolution with respect to their own employees and to parties over whom they have jurisdiction, and the county offices. That there is nothing illegal or unlawful in their act, . . ."

The plaintiffs appeal and specify (1) the court erred in holding the Federal Time Law did not apply and (2) the court should have sustained plaintiffs' motion for summary judgment and denied that of defendants.

On appeal the parties have stipulated the facts were never dis-

puted and there remained only a question of law to be decided.

There are essentially two basic disputes between the parties.

First, plaintiffs claim the county and city officials were attempting to adopt Central Standard Time as the legal time for Sherman County. The county and city officials say "no" they were only establishing office hours for their respective officials and working hours for their employees.

Second, plaintiffs claim that the resolutions of both governmental bodies were prohibited by the United States Standard Time Act of 1918 at the time of the trial and if not; then such resolutions are now in violation of the Uniform Time Act of 1966. Defendants deny that their actions were inconsistent with either time act.

The establishment of office hours for county offices is provided for in K. S. A. 19-2601 which, in pertinent part, reads:

". . . and they shall keep the same open during such days and hours as shall be fixed by the board of county commissioners; . . ."

Plaintiffs concede that under this statute the Board of County Commissioners has the legal right to establish the days and hours to be complied with by county officials and employees. Neither do plaintiffs seriously question the power of the city council to establish hours for city offices and working hours for city employees under the provisions of K. S. A. 14-401. (Goodland is a city of the second class.) We note this statute was repealed by the Laws of 1965, Chapter 90, Section 1, as a result of the adoption of the Cities' powers of home rule amendment, Article 12, Section 5 of the Constitution of Kansas at the general election in 1960 which became effective July 1, 1961. With reference to the power of a city governing body to determine its own local affairs, as granted in 14-401, *supra*, such power would appear to be extended rather than reduced by the amendment.

Even though conceding the authority of both the county and city governing bodies to fix the operating hours of their respective offices and employees, plaintiffs insist that both bodies have unlawfully imposed a time system upon all the people of Sherman County. We are unable to give any such import to the respective resolutions of the two governing bodies. We agree with the trial court that the two governing bodies were simply passing resolutions with respect to their own offices, employees, and the parties over whom they had jurisdiction. The recommendation of the Board of County Commis-

sioners and the request of the City Council were of no legal effect and unenforceable as to residents of the county generally.

The only question on this point within our power to determine in this appeal is whether or not the adoption of the resolutions was a lawful exercise of the power of the two governing bodies to establish operating hours for their respective offices and employees. The Board of County Commissioners is specifically directed to perform this function under the provisions of 19-2601, *supra*. We believe such authority is also within the scope of the broad powers delegated to cities to enact ordinances, not repugnant to the constitution and laws of the state, as deemed expedient for the health, good government and peace of the inhabitants. (*City of Beloit v. Lamborn*, 182 Kan. 288, 321 P. 2d 177.)

In *Ash v. Gibson*, 145 Kan. 825, 67 P. 2d 1101, it was stated:

"The question of the degree of self-government that shall be invested in local communities is older even than our government. Early in the history of this country the local unit was the town. At any rate, since the founding of our state the legislative policy has been to confer on the cities the right of self-government in such large measure that it amounts to the possession of police power where the safety, health and general welfare of its people are concerned. . . ." (p. 833.)

Many states have prescribed a standard system of time by statute (143 A. L. R., Anno., 1238, *1240*). The Kansas legislature, however, has not dealt with the subject, therefore it cannot be said the resolutions are in conflict with any state law.

If, as plaintiffs claim, the actions of the two governing bodies practically forced Central Standard Time on Sherman County some confusion may result. We have no grounds, however, for holding that the adoption of the resolutions, as we construed the import thereof, was not within the lawful authority of the respective governing bodies.

We shall consider next plaintiffs' claim of a conflict with federal laws.

The United States Standard Time Act of 1918, as amended, (15 U. S. C. A. § 261, *et seq.*) was in effect at the time of the adoption of the resolutions. The scope of the 1918 Act was enunciated in Section 2 thereof. In substance the Act was declared to govern the movement of the common carriers between the states and the performance of any act of any officer or department of the United States.

The question of inconsistency between the 1918 Act and a Mas-

sachusetts Daylight-Saving Act was before the United States Supreme Court in *Mass. State Grange v. Benton*, 272 U. S. 575, 71 L. Ed. 387, 47 S. Ct. 189. In holding there was no inconsistency between the state and federal acts the Supreme Court affirmed the decision of the United States District Court (10 F. 2d 515 [D. C. 1925]) in which it was stated:

"An answer to this contention is that, assuming that Congress has constitutional power under the standard of measures clause, or the commerce clause, or under both clauses, to provide a standard time applicable to all persons subject to the jurisdiction of the United States, it has not yet seen fit to go further than to make such standard time applicable only (1) to the movement of common carriers engaged in the interstate and foreign commerce; (2) to its own officials and departments; and (3) to all acts done by any persons under federal statutes, orders, rules and regulations. So construed the federal Standard Time Act is not exclusive of state action on the same subject-matter; there is no conflict between the two acts; . . ." (pp. 516, 517.)

Other cases dealing with some phases of the subject may be found in an annotation in 143 A. L. R. 1238.

We believe the decision in *Mass. State Grange v. Benton*, supra, which has remained unaltered, is controlling authority with respect to any conflict with the 1918 Act.

The Uniform Time Act of 1966, Public Law 89-387; 80 Stat. 107, was not in effect at the time of the adoption of either resolution under consideration here. However, both plaintiffs and defendants have discussed the applicability thereof in their briefs, therefore we feel called upon to express our views with respect thereof.

For our purposes here we do not find it necessary to state the Act of 1966 in its entirety. We shall, therefore, relate in substance only those provisions which we believe to be pertinent to this discussion.

The Act of 1966 was enacted on April 13, 1966, and April 1, 1967, was fixed as the effective date. While many of the sections of the 1918 Act were amended the overall applicability of the 1966 Act relates, as in the 1918 Act, to the performance of any act of any officer or department of the United States. (Sec. 2.) There are several noteworthy amendments and additions to the provisions of the 1918 Act.

In subsection (*a*) of Section 3 of the 1966 Act a uniform time (2 a. m. on the last Sunday of April) is established for advancing time one hour in each time zone and a uniform return to standard time is directed at 2 a. m. on the last Sunday of October of each

year. It is further provided that any state may exempt itself by law if such law provides that the entire state, including all political subdivisions, shall observe the standard time otherwise applicable under the Act of 1918. It clearly appears the intention of Congress was to fix a uniform time for an advance to Daylight-Saving Time and a withdrawal therefrom, except in those states which exempted themselves by proper legislative enactment. This intent was expressly announced in subsection (*b*) of Section 3 in which the provisions of the Act were declared to supersede any acts of States or or political subdivisions insofar as they may now or hereafter provide for advances in time or changeover dates different from those specified.

The provisions of subsection (*b*), *supra,* are aimed directly at the acts of States and political subdivisions. The language is not entirely clear as to whether or not the prohibition is limited to merely changeover dates for Daylight-Saving Time or includes a change from the standard time of one zone to another as was proposed in the resolutions under consideration here.

In any event, we do not give the Uniform Time Act of 1966 retroactive effect to nullify resolutions adopted several months before the passage of the Act, and more than a year prior to its effective date, even if such resolutions were to be considered in violation of the Act. We are not called upon to determine the validity of the resolutions with respect to the provisions of the Act after its effective date. In fact it appears a state court is not the proper forum to adjudicate a violation of the 1966 Act.

Unlike the Act of 1918 the 1966 Act contains an enforcement provision. The authority and direction to effect the provisions of the 1966 Act are delegated to the Interstate Commerce Commission. In subsection (*c*) of Section 3 provision is made that the commission or its duly authorized agent may apply to the district court of the United States, for the district in which a violation of Section 3 occurs, to enforce obedience by injunction or by other process.

In Section 5 the Administrative Procedure Act (5 U. S. C. 1001-1011) was made to apply to all proceedings under the Act.

In view of the specific designation of Federal District Courts, as the proper forum for the enforcement of the Act and the express declaration of the governing procedure in such proceedings,

it appears that the state courts are excluded from any jurisdiction in connection therewith.

For the reasons heretofore stated we conclude the adoption of the resolutions, limited in application to matters over which the resective governing bodies had jurisdiction, was within the scope of the lawful authority of those bodies and not in conflict with any state or federal law.

The judgment is affirmed.